**Anthony GIARDANO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Anthony LOPIPARO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 15683, 15684.**

United States Court of Appeals Eighth Circuit.

Jan. 8, 1958.

Rehearing Denied Feb. 10, 1958.

———◆———

Morris A. Shenker, St. Louis, Mo., and Morris Lavine, Los Angeles, Cal., for appellant Anthony Giardano. Morris Lavine, Los Angeles, Cal., filed separate brief.

Sidney M. Glazer, Berkeley, Mo., (Mark M. Hennelly, St. Louis, Mo., with him on the brief), for appellant Anthony Lopiparo.

Wayne H. Bigler, Jr., Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., and Murry L. Randall, Asst. U. S. Atty., St. Louis, Mo., were on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

Appellants, together with Twin City Distributing Company, a corporation, and Ralph Caleca, were charged in the first count of a two count indictment with the substantive offense of willfully attempting to evade a part of the federal taxes due from the corporation for the fiscal year ended March 31, 1953, by filing a false corporation tax return and in the second count with conspiring to willfully attempt to evade the same taxes by certain means set forth in detail and committing certain overt acts to effect the object of the conspiracy. Pleas of not guilty were entered and at the conclusion of the government's evidence on the trial of the case, the first count was dismissed by the government. The jury found appellants guilty on the second count and each was sentenced to four years imprisonment and a fine of $5,000.00. They prosecute separate appeals, submitted and considered together on one record.

The second count of the indictment, after charging the conspiracy in general terms, included the following:

"It was a part of said conspiracy that said defendants, well knowing that there was in full force and effect within the City of St. Louis, Missouri, an ordinance levying a tax upon the sale at retail of cigarettes, and that payment of the tax thereon was required to be shown by the use of a stamp imprinted upon all packages of cigarettes so sold, did plan and arrange for the use of a false, forged and counterfeited cigarette tax stamp die for the purpose of stamping the City of St. Louis tax stamp impression, purporting to show payment of the tax, on cigarette packages. That defendants did further use pressure and coercion in their methods of soliciting customers of said corporation and did collect from such customers various charges for services in stamping cigarette packages to show payment of the City of St. Louis cigarette tax, and for their charges for such services did plan and arrange to receive from said customers check payments for a small portion of such stamping charges incurred by such customers and cash payments for the larger portion of such charges so incurred by said customers. That defendants did plan to issue to their customers a receipt covering check payments for such stamping charges and to issue no receipt covering the cash portion of the payment for such charges, and did further plan that such cash payments would be omitted and not shown or recorded in the books and records of said corporation, but did arrange to have check payments made to the bookkeeper of said corporation and record in its books and records only such payments, while cash payments were to made directly to said defendants who would arrange to deposit only check

payments in the corporation's depository and use all cash payments for their respective, direct and indirect, personal use and benefit."

"It was further a part of said conspiracy that defendants did plan and arrange to induce the customers of said corporation to refrain from keeping any records showing cash payments made to defendants, the purpose and plan of said conspiracy being that said defendants would prepare and cause to be prepared and filed with the Director of Internal Revenue, St. Louis District, at St. Louis, Missouri, a false and fraudulent tax return for and on behalf of the said corporation for the fiscal year ended March 31, 1953, wherein such tax return would state that the net income of said corporation for said fiscal year was far less than it actually was and that the tax due from said corporation to the United States of America was far less than the amount of tax actually due."

Eight overt acts charged to effect the object of the conspiracy were in substance: (1) that appellants compelled various cigarette vendors, by the use of the medium of fear, to have cigarettes sold by them stamped with the City of St. Louis tax stamp by the Twin City Distributing Company; (2) appellants used a counterfeit cigarette tax stamp impression for such stamping; (3) appellants received payments in cash in the amount of $27,881.00 more or less for affixing the tax stamp impression on cigarette packages and failed to record the amounts so received on the corporation books; (4) appellants demanded that payments for the service of stamping cigarette packages be made partially by check, for the smaller portion of the charges to the bookkeeper of the corporation and partially by cash for the greater portion of the stamping charges incurred, such cash payments to be made to either or both appellants; (5) appellants caused receipts to be issued to customers for payments made by check to the corporation

for the stamping and caused no receipt to be issued for cash payments therefor; (6) appellants instructed a customer not to keep any record of the cash payments made to appellants for tax stamping by said customer; (7) appellants caused check payments to be placed in the corporation's depository and cash payments to be withheld from said depository; (8) Anthony Lopiparo and Ralph Caleca as President and Secretary-Treasurer of said corporation filed and caused to be filed the United States Corporation Income Tax Return of the corporation for the fiscal year ended March 31, 1953, with the Director of Internal Revenue at St. Louis, Missouri.

No evidence was adduced by either of the defendants on the trial. They rested at the conclusion of the government's evidence and moved the court "to enter a judgment of acquittal as to Count 2 of the indictment for the reason that the evidence is insufficient to sustain a * * judgment of conviction." They did not specify in the motion any particulars in which they claimed the evidence to be insufficient and the court reserved ruling on the motion. After the verdict of guilty was returned the motion was renewed, argued and over-ruled. The refusal to order acquittal for insufficiency of the evidence is here assigned as error and we have examined and fully considered the evidence with respect to its sufficiency.

■ We find that each material element of the charge of the second count of the indictment against these appellants is supported by sufficient evidence. It is clearly shown that the three individuals charged as defendants were associated first as partners and then as owners and managing officers of the defendant corporation and were engaged in their business in selling cigarettes through vending machines and to others who sold through such machines in the St. Louis area, city and county. They occupied a store at 6146 Delmar in St. Louis and employed a lady there to keep the books for the business. They also employed an accountant to audit the books and make out

the corporation federal income tax return from the books he audited. Then they carried on the business in such a way that a substantial part of the income derived from it would not be known to the bookkeeper or the auditor and would not be entered on the books and would, therefore, be and it was knowingly and willfully omitted from the corporation income tax return with intent to evade that part of the income tax that became due for the period by reason of the receipt of it.

The omitted income was obtained by defrauding the City of St. Louis in respect to the tax which the City imposed of two cents per package of cigarettes sold within the area. Payment of the city tax was required to be shown by the use of a stamp imprinted upon each package of cigarettes so sold and such imprinting was done by means of a machine referred to as a Pitney-Bowes machine. The defendants had such a machine and the proof was clear that a false, forged and counterfeited cigarette stamp die was provided and used. Defendants obtained cash from sales of their own cigarettes sold through their vending machines and cash payments and payments by check for tax stamping charges on packs of cigarettes from at least seven identified customers who sold through vending machines in St. Louis. Defendants induced those customers partly by use of the medium of fear and partly by charging them a cut rate, which was only a fraction of the true amount of the city tax, for impressing the tax stamp on the cigarette packages. The payments which the customers made by check for the stamping done for them were at lawful rates and were disclosed to the bookkeeper, included in the accounts and consequently in the income tax return of the corporation, but the cash payments were concealed and omitted from the tax return. The evidence was that instead of receiving about $16,000.00 from the other cigarette vendors in the city for tax stamping during the period, as reported to the auditor and shown on the books, defendants received approximately $44,-000.00 from that source. The question whether the defendants intended to evade the federal income tax in respect to the cash they obtained and willfully omitted to have included in the corporation's tax return, was for the jury and its verdict against them was supported by the evidence.

It is contended for appellant Giardano that he was merely a minority stockholder of the corporation taxpayer; that he did not sign its income tax return or keep or inspect or know the contents of its books and, therefore, did not conspire to attempt to evade the taxes due from the corporation. But the contention is without merit. Giardano, Lopiparo, and Caleca were clearly shown to have cooperated in carrying on the scheme for defrauding the city and obtaining payments for the tax stamping of cigarette packs and in separating the legitimate check payments, disclosed to the bookkeeper and accounted for in the income tax return, from the concealed cash payments. The jury could fairly infer from the nature of the scheme and the way the defendants operated it that each of them knew and conspired to willfully accomplish the necessary consequence that the corporation books and the income tax return compiled from the books would omit the income tax due on account of the part of the income which was concealed from the bookkeeper and from the auditor employed to make out the income tax return from and in accordance with the corporation's books. The jury could also fairly infer from the evidence that the defendant Giardano planned and conspired, as charged, to willfully attempt to evade the income tax of the corporation due for the period in question.

Other points argued for reversal of the judgment of conviction are to the effect: (1) that there was not sufficient evidence of the commission of either of the alleged overt acts charged in the indictment numbered 1, 2, 6, 7, and 8; (2) that the court erred in admitting in evidence exhibits numbered 2, 11, 28, 30, 34, 38, 40, and 41; (3) that the court erred in instructing on the word "willfully";

(4) that the court erred in refusing to give defendant's requested instructions 7 and 10; (5) that the court erred in failing to read to the jury the statutory definition of the crime of willfully attempting to evade and defeat federal taxes; (6) and that the court erred in charging the jury that it was not incumbent on the prosecution to prove that all the means set out in the indictment were in fact agreed upon to carry out the conspiracy.

1. As to the alleged overt acts claimed to be unsupported.

*Overt act one, Compulsion by medium of fear.* Credible evidence was adduced by the government that seven cigarette vendors doing business in St. Louis were approached by appellants and solicited to get their cigarettes stamped by the Twin City company, in part for cash payments and in amounts much less than the prescribed city tax and in part for full payment of the city tax, by check. When those solicited refused, some of their vending machines would be removed and the company's machines substituted. Another approach and solicitation would follow and in instances there were repeated refusals and substitutions of vending machines until those solicited succumbed and joined the scheme. On occasion as many as three men went together to make the approach and solicitation. The charge of compulsion by the medium of fear, at least of economic loss, was sufficiently supported.

*Overt act two, Use of counterfeit stamp.* The proof that a counterfeit cigarette tax stamp die was used for the purpose of stamping the city cigarette tax stamp impression on the cigarette packages was made by a Mr. Madenford, who was employed by the manufacturers of the Pitney-Bowes machine used by the city of St. Louis. He had examined probably hundreds of thousands of cigarette tax meter impressions and he demonstrated that some of the packs of cigarettes proved to have been bought from vending machines licensed to the Twin City company bore tax stamps which were all alike and were forged and counterfeit. The discovery that the tax stamp die so used in the defendant's vending machines was counterfeit was not made until September, 1953, but it afforded the only and sufficient explanation of the precise means by which the conspirators had obtained the income they sought to evade. The proof was clearly competent and supported the allegations of the indictment as to the plan of the conspiracy and as to overt act numbered 2.

*Overt act seven. As to the depositing of payments made by check to the Twin City company for tax stamping and withholding from deposit the cash payments.* The company's books showed $163,790.00 received from vending machines and $23,387.00 from wholesale sales and stamping for others. The tax return showed $187,188.00 as total receipts not broken down. The books were not available and both the company accountant and the revenue agent testified from transcripts of the monthly receipts totals, the dealers' stamping ledger and vending machine and cash sales totals.

Six of the dealers testified that they paid $26,175.00 in cash for cut rate stamping, mostly to appellants for which they got no receipts. Their legal rate payments receipted for totaled $11,810.-00. The transcript of the company's dealer ledger showed within a few dollars of the same sum, namely $11,874.00 received from six of the same dealers. The seventh dealer was not a witness. He was listed on the company books as having paid $3,950.00. The testimony of the revenue agent was that the dealers had made cut rate cash payments to Twin City in the period in question amounting to $26,175.00 and that if the amount had been included in the return, the tax should have been $14,177.00 instead of $2,503.00 reported. The proof as to overt act numbered 7 was sufficient.

*Overt act eight. As to the filing of the company's tax return.* It is contended for Giardano that the court erred in receiving the corporation tax return in evidence against him as he did not prepare, sign or file it, but the contention is with-

out merit. His participation in the conspiracy shown by numerous acts in managing and directing the corporation in association and co-operation with the other defendants was established by competent and sufficient evidence and he was bound by the acts done by his co-conspirators to effect the object of the conspiracy. The filing of the false corporation return by his associates, the appellants who signed it, was such an act. It was properly received in evidence against all defendants.

*Overt act six.* Under this number the indictment charged that appellants instructed a customer not to keep any record of cash payments made for the cut rate tax stamping by defendants and it is admitted that the record does not contain direct evidence of the giving of such an instruction to any customer. But the scheme the defendants were charged with carrying on and were shown to have carried on to defraud the city of St. Louis in respect to its cigarette tax necessarily involved secrecy on the part of all participants and the proof, both as to defendants and as to the customers, showed such secrecy was observed. It was fairly inferable from all the circumstances that the defendants included the feature of secrecy in their exposition of the scheme for lessening the city cigarette taxes their customers would have to pay when they drew the seven customers into it. It is also clear that the defendants committed a large number of overt acts to effect the object of their conspiracy including the other seven overt acts specified in the indictment and it is not conceivable that the jury found none against them, save only the one that is numbered six.

Here the declaration of the court in Gilson v. U. S., 2 Cir., 258 F. 588, 590, is applicable. The court said: "In this instance no injustice was done. The evidence was such as to require the submission of the case to the jury, and it is in our opinion a very far-fetched suggestion that the jury might have attached importance to an unproved overt act, when there were so many (far more than the indictment numbers) of overt acts amply shown by the evidence submitted to them." The lack of direct proof in respect to the overt act numbered six was without prejudice to defendants.

2. As to the admission of the numbered exhibits.

In September, 1953, city police officers made purchases of cigarettes from vending machines throughout the city which were licensed to the defendant company and examination of the packages and the tax stamps on them by an expert witness disclosed that a counterfeit die had been used in stamping them. The serial number of the tax stamping machine possessed and used by defendants was 23914, and the tax impression on the bottom of cigarette packs bearing that number bought from machines licensed to the defendant company was proved to be false and counterfeit. The exhibits complained of identified tax stamped packs of cigarettes so purchased and the original tax impression sheet of defendant's tax meter numbered 23914 produced by the manufacturer of the machine.

The appellants contend that the clear and convincing proof of the use of the counterfeit tax stamping die to reduce payments of cigarette taxes due the city for the profit of the defendant corporation was inadmissible because the discovery of the counterfeit was not made until after the end of the tax year ending March 31, 1953. But the contention is without merit. Up until the demonstration of the use of the counterfeit die, the evidence showed only that defendants were stamping cigarettes as city tax paid in consideration of the payment to them of thousands of dollars less than the amount of the tax and thriving. A reasonable inference from that evidence was that they were in some way defrauding the city of their profit. But when their possession and use of the counterfeit tax stamp die was proven, their whole scheme, including the intent, was disclosed beyond peradventure. The proof of the use of the counterfeit die was plainly admissible notwithstanding the tardiness of its discovery.

3. As to the word "willfully".

■ We find no error in the court's definition of the word "willfully". In the context of the charge against defendants and the instructions given to the jury, the word meant as stated by the court, "intentionally, that is, not accidentally and it connotes and carries with it the idea of knowledge of the criminality of the act alleged to have been committed by either of the defendants." The word was used throughout in conjunction with "unlawfully", "knowingly" and "feloniously" and there was no prejudice to defendants in respect to the definition given by the court.

4. As to the refusal to give requested instruction number ten which read:

"Even though you may find and believe from the evidence that defendants, or either of them, did plan and arrange to receive from customers of Twin City Distributing Co., check payments for a portion of its charges for services in stamping cigarette packages and cash payments for portions of such charges so incurred by said customers, and did not issue a receipt covering the portions of the payment in cash and did issue receipts for the portion of the payments by check for such charges, it is still your duty and you must acquit each of the defendants unless you find and believe from the evidence that defendants conspired to defeat and evade the income tax liability for the Twin City Distributing Co., for the fiscal year ending March 31, 1953."

■ The substance of this requested instruction was fully and completely covered by the instructions given by the court in which all of the elements necessary for them to find beyond a reasonable doubt in order to convict were defined and explained. There was no error in refusal of the request. Feigenbutz v. United States, 8 Cir., 65 F.2d 122.

As to the refusal to give requested instruction number seven which read:

"The Internal Revenue law allows a corporate taxpayer to compute its taxable income on the basis of a fiscal year period only if the taxpayer both keeps adequate books of account and has an annual accounting period. If a corporate taxpayer does not comply with these two conditions, it must compute its income on the basis of a calendar year period."

"The instant indictment charges a conspiracy to defeat and evade the income tax for the fiscal year, April 1, 1952 to March 31, 1953. Before you can convict defendants, it is necessary that you find and believe from the evidence that the Twin City Distributing Co., both kept adequate books of account and had an annual accounting period and therefore, was entitled to file a tax return for the fiscal year mentioned in the indictment rather than for a calendar year period."

■ We do not find any correct statement of the law applicable to the case contained in the requested instruction and there was no error in refusing to give it.

5. As to the fact that the court did not read Section 145(b), Title 26 United States Code Annotated to the jury.

The first count of the indictment charged a violation of that section substantially in its terms and was read to the jury during the opening statement of the prosecutor. He stated it and how it would be proved. In the course of the instructions the court clearly explained and defined every ingredient of the offense necessary to be proved beyond a reasonable doubt in order to convict. The only inference to be fairly drawn from the whole record is that by the time the court came to instruct the jury it appeared to be superfluous to read the words of section 145(b). Accordingly no request was made to have them read either when the instructions were first given or upon the repetition of them

which was accorded at the request of the jury.

On trial of conspiracy to steal a horse it might not be inappropriate to read the statute against stealing, but a fair trial might well be afforded without such reading. In this case there is no reason to infer that any prejudice could have been caused by defendant by not reading the words of the statute against willfully attempting to evade a federal tax. The content of the statute was clearly before the jury. It was not reversible error that the court did not read the section, absent any request of defendant to do so. United States v. Heine, 2 Cir., 149 F.2d 485; United States v. Capitol Meats, 2 Cir., 166 F.2d 537, certiorari denied 334 U.S. 812, 68 S.Ct. 1018, 92 L.Ed. 1743; Lewis v. United States, 10 Cir., 49 F.2d 272. Though certain cases cited in the foregoing decisions would lead to a contrary conclusion, we are not in accord with them.

6. As to the necessity to prove all the means of effecting the object of the conspiracy set out in the indictment.

The court explained to the jury through many paragraphs of instructions exactly what were the essential elements of the conspiracy with which the defendants were charged. The indictment was read to them and the court defined precisely what had to be proved beyond a reasonable doubt in order to justify convicting. It was made clear that the gist of the conspiracy charged was the common purpose to willfully evade the federal tax. The paragraph of the instruction now attacked is the following:

"It is, therefore, necessary as to Count 2 of the indictment, before you can convict the defendants, or either of them, that you find beyond a reasonable doubt that there was a conspiracy, and that the acts charged to have been committed by the defendants were intentionally committed by the defendants pursuant to the conspiracy, and that the acts were committed for the purpose and object of advancing the conspiracy charged, and with knowledge that if the plan of the conspiracy was accomplished, the conspiracy would directly and substantially affect the income tax liability of the Twin City Distributing Company for the fiscal year ending March 31, 1953, by substantially reducing the net income and the amount of income taxes the corporation would owe, and was known to the defendants when they entered into the conspiracy."

"It is not enough for the prosecution to show the evidence of an agreement and the membership therein of any particular defendant. This alone would not prove that such defendant participated in the agreement knowingly and willfully. With respect to each defendant the prosecution has the further burden of proving with respect to Count 2 of the indictment beyond a reasonable doubt that such defendant participated in such agreement willfully. If you are not convinced beyond a reasonable doubt that such defendant acted willfully, then your verdict must be not guilty."

"It is not incumbent upon the prosecution to prove that all the means set out in the indictment were, in fact agreed upon to carry out the conspiracy, or that all of them carried out and put it in operation. It is sufficient if it be established to your satisfaction and beyond a reasonable doubt that the ones described in the indictment, as I have referred to, were agreed upon to be used to effect the conspiracy, and were used."

The means for evading the tax to which the court referred in the quoted paragraphs were set out in a prior paragraph of instructions, as follows:

"It is the position of the prosecution that the defendants entered into an agreement with each other and others, the purpose of which was to evade and defeat a large part of the income taxes to be due and owing, and due and owing to the United States of America by the Twin City

Distributing Company for the fiscal year ending March 31, 1953, as charged in Count 2 of the indictment, and that the defendants and each of them were officers and stockholders of the Twin City Distributing Company; that said defendants knew there was in full force and effect within the City of St. Louis, Missouri, an ordinance levying a tax upon the sale of cigarettes, and that payment of the tax thereon was required to be shown by the use of a decal or stamp imprinted upon all packages of cigarettes so sold, did plan and arrange for the use of a false, forged and counterfeited cigarette stamp tax die for the purpose of stamping the City of St. Louis tax stamp impression, purporting to show payment of the tax, on cigarettes; that defendants solicited customers of said corporation and did collect from such customers various charges for stamping cigarette packages to show payment of the City of St. Louis cigarette tax, and for such stamping did receive from said customers payments for such stamping charges, and did further plan that such cash payments should be omitted or not shown in the books and records of said corporation; and that the defendants did prepare and cause to be prepared a false and fraudulent tax return on behalf of said corporation for the fiscal year ending March 31, 1953, wherein such tax return stated that the net income of said corporation for said fiscal year was substantially less than it actually was, in that some $26,-175.00 of the money received by the corporation was omitted from the books, and that as a result of the omission from the books the net income, and the tax due from said corporation to the United States of America as a result of the omission

of the said $26,175.00 as income was substantially less than the amount of tax actually due."

■ We find no merit in the assertion of error in respect to these instructions. There was without serious question substantial evidence that defendants used all the means described by the court to effect the object of the conspiracy. We are also of the opinion that the evidence to support the remaining allegations of the indictment here attacked as unsupported was substantial, i. e.

"It was further a part of said conspiracy that defendants did plan and arrange to induce the customers of said corporation to refrain from keeping any records showing cash payments made to defendants."

It was shown that defendants gave no receipts for the cash payments made to them and none of the customers kept any record of such payments with the possible exception of Routman and Presley. Routman testified, "We kept a memorandum of this additional money (the cash payments) in order to keep track of our own books. * * *" The memorandum "was not one of the books that were used in the bookkeeping in my office." Presley said, "I know by check stubs that those particular checks are the ones I made out and got cash for for Twin City purposes. It is my only way of telling." In view of the proof of the character of the fraud on the city being carried on by defendants, it was fairly inferable from the evidence that the quoted allegation of the indictment was true.

Other matters have been ably argued at the bar and in the briefs which have been fully considered but do not require further discussion.

We hold that the judgments appealed from are without error and should be and are in all respects,

Affirmed.