**UNITED STATES of America,**
**Appellee,**

v.

**Samuel BLETTERMAN, Appellant.**
**No. 295, Docket 26018.**

United States Court of Appeals
Second Circuit.

Argued March 1, 1960.

Decided May 13, 1960.

Edward Q. Carr, Jr., New York City (Anthony F. Marra, New York City, on the brief), for appellant.

Cornelius W. Wickersham, Jr., U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Joan T. Harnes, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before CLARK, MOORE, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

Defendant was convicted after trial to a jury of conspiracy to possess and sell property stolen from interstate commerce and of possession of such property, knowing it to have been stolen. 18 U.S.C. §§ 371, 659. This court granted leave to appeal *in forma pauperis*. The property in question, consisting of furs and jewelry, had been stolen from air shipments at Idlewild Airport by a group of cargo handlers. These employees, who pleaded guilty prior to trial, testified, *inter alia,* to the theft of a package of 3,000 diamonds in June 1957 and of four cartons

of mink stoles in September 1957. All but two of the diamonds were disposed of through one Joseph Lambus.

The testimony of one of the employees, Richard Carosone, if believed, established the following facts relating to defendant's participation in the scheme. After the theft of the furs, Carosone contacted defendant in reference to their disposal and informed him that the goods had been stolen. Defendant, upon receiving the furs and the two remaining diamonds, told Carosone that the group had been "swindled" on the earlier diamond sale and that if they obtained any further jewelry he would give "one-day service on them." Another package of jewelry, consisting of two diamond bracelets, a watch bracelet, and two rings, was thereafter stolen and delivered to the defendant, who succeeded in selling the furs and three items of jewelry. Carosone received the proceeds from these sales, less a commission deducted by defendant. The two unsold items from the jewelry shipment were found in defendant's possession at the time of his arrest.

Error is assigned to the court's instruction that the jury might find defendant guilty on the conspiracy count if it found that he participated therein and that at least one of six overt acts was committed in furtherance of the conspiracy. At the trial defendant raised a general objection to the reading of any overt act in which he was not named. No such position is now advanced, but it is asserted that overt acts one and two were independent of any conspiracy to which defendant might have been a party. It is also urged, and the Government concedes, that no evidence was introduced as to overt act four.

Even if these objections had been specifically raised below, they would not support the reversal sought by defendant. Evidence of the series of thefts and the concomitant disposal of the goods was sufficient to show a continuing conspiracy. Defendant's knowledge of the previous thefts at the time he agreed to assist in the sale of merchandise on hand

or to be obtained, together with his active participation in such sales, demonstrates a purposeful association with the venture. There is thus no foundation for a claim of variance, since "the conspiracy is determined by the design of the parties who originate it, and when a new person joins, if the purposes remain the same, it continues to be the single venture which it was before." Kaplan v. United States, 2 Cir., 7 F.2d 594, 596, certiorari denied 269 U.S. 582, 46 S.Ct. 107, 70 L.Ed. 423; see United States v. Markman, 2 Cir., 193 F.2d 574, 576–577. This is so, notwithstanding the theoretical difficulty of reconciling such result with a definition of conspiracy as a continuing act of agreement. See Kaplan v. United States, supra; Developments in the Law—Criminal Conspiracy, 72 Harv. L.Rev. 920, 928 (1959). While we need not now decide whether a new party may be subjected to additional liability for crimes committed by the original parties prior to his entry, we hold that previous acts of coconspirators suffice to satisfy the overt-act requirement. See United States v. McKee, 2 Cir., 220 F.2d 266, 268; 72 Harv.L.Rev. 920, 928, 945–949 (1959). Although submission of overt act four to the jury was improper, we deem such error harmless in view of the fact that the occurrence of the five remaining acts not only was clearly established, but indeed was undisputed. See Giardano v. United States, 8 Cir., 251 F.2d 109, certiorari denied 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147; Gilson v. United States, 2 Cir., 258 F. 588, 590, certiorari denied 251 U.S. 555, 40 S.Ct. 119, 64 L.Ed. 412.

■ Defendant also complains of an instruction to the jury that "a sale of goods at a price considerably less than the market value may be considered as an indication of knowledge on the part of one associated with the sale, that the transaction was illegal." This instruction is a proper statement of the law. United States v. Werner, 2 Cir., 160 F.2d 438, 443. It is asserted, however, that the evidence was insufficient to support the charge. Carosone testified without objection that documents accompanying the jewelry shipment valued the three items sold by defendant for $6,000 at approximately $30,000. Defendant now suggests that it was not shown that $30,000 represented a fair market price for sale to a jeweler; but he failed to adduce any evidence on this question at the trial. Further, no objection was voiced to the instruction at the time that it was given. Fed.R.Crim.P. 30.

■ The remaining objection relates to the trial court's denial of a pretrial motion for a change of venue or an adjournment of trial. This motion was based upon the publicity attending the arrest of two men charged with attempting to intimidate a government witness in the case. The United States Attorney's office was quoted as identifying the men as friends of the defendant. The extent of the publicity, five days before the trial, consisted of a routine and noninflammatory article as to police activity in the New York Daily News and the Long Island Press and a radio announcement. The court below denied the motion on the ground that such a normal item among the avalanche of news published in New York City would not remain in anyone's mind unless he particularly knew or had some relationship with the defendant. It was further noted that defendant could ascertain on *voir dire* whether any talesman had "read anything about this case." We are in accord with this disposition of the motion. See United States v. Moran, 2 Cir., 236 F.2d 361, certiorari denied Moran v. United States, 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118; United States v. Moran, 2 Cir., 194 F.2d 623, certiorari denied Moran v. United States, 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362. See also Stroble v. State of California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872. Defendant suggests that the participation of the prosecution in the release requires reversal. Cf. Delaney v. United States, 1 Cir., 199 F.2d 107, 113, 39 A.L.R.2d 1300. While this factor might be entitled to some weight, it cannot compensate for the complete absence of a showing of

prejudice. As this court noted in United States v. Rosenberg, 2 Cir., 200 F.2d 666, 670, certiorari denied Sobell v. United States, 345 U.S. 965, 73 S.Ct. 951, 97 L.Ed. 1383: "[T]he essence of the wrong done the petitioners does not lie in the intent of the prosecutor but in the prejudicial publicity which may come to the attention of the jury."

Once again we are indebted to the representatives of the New York Legal Aid Society for devoted safeguarding, as assigned counsel, of the rights of the accused.

Conviction affirmed.