STATE OF CONNECTICUT *v.* THOMAS BOYKIN
(9653)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued January 8—decision released May 19, 1992

*Neal Cone,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John Waddock,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant, Thomas Boykin, was charged by information with aiding another person to engage in the sale of narcotics in violation of General Statutes §§ 53a-8[1] and 21a-278 (b),[2] and conspiracy to

---

[1] General Statutes § 53a-8 provides: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[2] General Statutes § 21a-278 provides in pertinent part: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION OR ADMINISTRATION BY NON-DRUG-DEPENDENT PERSON. . . . (b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic

sell narcotics in violation of General Statutes §§ 53a-48 (a)[3] and 21a-278 (b). A jury convicted the defendant on both counts and he was sentenced to concurrent fourteen year prison terms suspended after ten years with three years probation. In this appeal, the defendant claims that the trial court improperly (1) failed to grant a motion for judgment of acquittal on both the conspiracy and accessory counts, (2) instructed the jury on the overt act element of the conspiracy charge, and (3) instructed the jury that a reasonable doubt was not a doubt raised by ingenuity of counsel. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On June 2, 1989, the New Haven police department received a complaint that drug dealing was taking place on Arthur Street, a narrow one-way street. Evelyn Harris complained that drugs were being sold in front of 37 Arthur Street, directly across the street from her house. In response to the complaint, Officers Sam Cotto and Vincent Riccio drove a marked patrol car past 37 Arthur Street at about 9:30 p.m. The officers observed Arnold Green and the defendant at that location. Green was sitting on a milk crate in the drive-

substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution. . . ."

[3] General Statutes § 53a-48 provides in pertinent part: "CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

way near the street, and the defendant was five to fifteen feet away from him pacing back and forth, looking up and down the street. The officers drove by and observed Green and the defendant conversing. Cotto and Riccio decided to conduct a surveillance from inside the Harris house to see if Green and the defendant were, in fact, selling drugs. They told two backup officers, Marvin Marable and Michael Quinn, of their plan and then entered the Harris house through a rear door. They set up surveillance from a front room window facing 37 Arthur Street. Through the window, Cotto and Riccio had an unobstructed view from a distance of fifty feet. The area was lighted by a street light in front of 37 Arthur Street.

The officers observed three transactions within forty-five minutes. The first involved a black man who approached Green and engaged in a brief conversation with him. Green got off the crate, walked to nearby bushes, retrieved a blue packet and handed the item to the man in exchange for money. The unidentified man walked away.

The second transaction occurred when a black or Hispanic man approached Green. Green went to the same bush, retrieved a blue packet and gave it to the man in exchange for money. The defendant was with Green during the transaction and took the money from Green and placed it in his pocket. The unidentified purchaser left.

After they observed the two transactions, the officers decided to arrest Green and the defendant. They radioed officers Michael Quinn and James Carter, provided a description of the two suspects and told the officers to position themselves for an arrest. They then radioed Marable in another vehicle and asked him to drive his marked police vehicle past 37 Arthur Street so they could gauge the suspects' reactions, and ascer-

tain their escape route. When Marable's cruiser entered Arthur Street, the defendant immediately shouted to Green. Green got off the crate, grabbed an object from behind the bush and ran to the rear of the house. Once Marable's vehicle had left Arthur Street, the defendant shouted something to Green, who reappeared and again sat on the crate.

When Green returned from the rear of the house, an Hispanic female approached him and spoke with him in the defendant's presence. Green again went to the rear of the house. While Green was in the rear of the house, the defendant and the unidentified female continued their conversation. Green came back with a blue packet which he gave to the female in exchange for money. Again Green handed the money to the defendant who placed it in his pocket. The female left.

At this point, Cotto and Riccio radioed to the other officers to move in for the arrest. Cotto and Riccio then left the Harris house through the back door and ran to the street, where they arrested Green. The defendant immediately walked up Arthur Street in a northern direction, where he was seized by Quinn and Carter. After Cotto identified the defendant, he was placed under arrest. The officers searched both Green and the defendant. Green had $115, and the defendant had $35.

Marable searched the rear of 37 Arthur Street where Green had gone with the object he had taken from behind the bush. Near some trash, Marable found a clear plastic bag containing fifty blue glassine envelopes filled with a white powdery substance. He subsequently handed the bag to Cotto. A field test and a later laboratory test revealed that each of the packets contained cocaine.

## I

### SUFFICIENCY OF THE EVIDENCE

The defendant first claims that the trial court improperly denied his motion for judgment of acquittal on both

the conspiracy and the accessory charges. The insufficiency of the evidence claims can be divided into three parts: (1) the state failed to prove an agreement between Green and the defendant; (2) the state failed to prove the commission of an overt act in furtherance of the conspiracy subsequent to the formation of the alleged agreement; and (3) the state failed to prove that the defendant had the requisite specific intent (a) to conspire with Green to sell cocaine, (b) to aid Green in that venture, and (c) to commit the substantive crime of selling cocaine.

We utilize a two-part analysis when reviewing a challenge to the sufficiency of evidence. *State* v. *Henning,* 220 Conn. 417, 420, 599 A.2d 1065 (1991); *State* v. *Bewry,* 26 Conn. App. 242, 245, 600 A.2d 787 (1991), cert. denied, 221 Conn. 911, 602 A.2d 11 (1992). First, we review the evidence in the light most favorable to sustaining the verdict. *State* v. *Henning,* supra. We then determine whether, on the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence establishes guilt beyond a reasonable doubt. Id. In the review process, the probative force of the evidence is not diminished if it consists in whole or part of evidence that is circumstantial rather than direct. Id., 420–21; *State* v. *Montanez,* 219 Conn. 16, 19–20, 592 A.2d 149 (1991).

" '[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt "does not require a court to ask 'itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt.' " (Emphasis in original.) (Citation omitted.) *Jackson* v. *Virginia,* [443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).] "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt. See *Johnson* v. *Louisiana,* 406 U.S. [356, 362, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972)]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." (Emphasis in original.) (Footnotes omitted.) *Jackson* v. *Virginia,* supra, 319.' *State* v. *Scielzo,* 190 Conn. 191, 197–98, 460 A.2d 951 (1983)." *State* v. *Stellato,* 10 Conn. App. 447, 452, 523 A.2d 1345 (1987).

## A

The defendant first asserts that the state failed to prove the existence of an agreement, which is a necessary element in the crime of conspiracy.[4] The existence of a formal agreement between the parties, however, need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. *State* v. *Lewis,* 220 Conn. 602, 607, 600 A.2d 1330 (1991); *State* v. *Vessichio,* 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986); *State* v. *Lynch,* 21 Conn. App. 386, 392, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). Because of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. *State* v. *Vessichio,* supra. Consequently, it is not necessary to establish that the

---

[4] See footnote 3, supra.

defendant and his coconspirators signed papers, shook hands, or uttered the words "we have an agreement." *State* v. *Stellato,* supra, 453. Indeed, a conspiracy can be inferred from the conduct of the accused. *State* v. *Lynch,* supra, 400.

Finally, "[t]he size of a defendant's role does not determine whether that person may be convicted of conspiracy charges. Rather, what is important is whether the defendant willfully participated in the activities of the conspiracy with knowledge of its illegal ends." *United States* v. *Vanwort,* 887 F.2d 375, 386 (2d Cir. 1989), cert. denied sub nom. *Chapoteau* v. *United States,* 495 U.S. 906, 110 S. Ct. 1927, 109 L. Ed. 2d 290 (1990). Participation in a single act in furtherance of the conspiracy is enough to sustain a finding of knowing participation. Id.; *United States* v. *Zabare,* 871 F.2d 282, 287 (2d Cir.), cert. denied, 493 U.S. 856, 110 S. Ct. 161, 107 L. Ed. 2d 119 (1989).

Cotto and Riccio observed the defendant and Green for forty-five minutes. They observed the defendant pacing about Arthur Street within five to fifteen feet of where Green was sitting on a milk crate selling cocaine. The defendant appeared to be keeping watch. The defendant often conversed with Green. The officers testified that in their opinions the defendant was acting as a lookout. During two of the three cocaine sales, the defendant was with Green, talked with one of the purchasers and accepted the cash handed to him by Green immediately after those two cocaine sales. When Marable drove past the scene, the defendant shouted to Green. Green immediately got off the crate, took something from behind the bush where he had previously obtained the cocaine, and went behind 37 Arthur Street. After Marable was out of sight, the defendant shouted to Green, who reappeared from behind the building, took his position on the crate and continued to sell cocaine. Riccio testified that each

packet of cocaine was worth $20 on the street. The defendant took cash from Green after two sales and had $35 in his possession.

From this evidence, the jury could have reasonably and logically inferred that the defendant and Green had agreed to work in concert to commit the crime of selling cocaine. The defendant's close proximity to Green throughout the surveillance, coupled with his frequent conversations with Green, support the inference that the defendant associated himself with the venture in some fashion, participated in it as though it was something he wanted to bring about or sought by his actions to make succeed. The defendant's actions of monitoring the scene, conversing with both Green and one of the drug purchasers, taking cash from Green immediately following the second and third transactions, and warning Green of Marable's cruiser coming and going support the inference that he and Green were partners in the crime. *United States* v. *Martino,* 759 F.2d 998, 1002–1003 (2d Cir. 1985); see *State* v. *Cavanaugh,* 23 Conn. App. 667, 674, 583 A.2d 1311 (1990), cert. denied, 220 Conn. 930, 598 A.2d 1100 (1991) (coconspirator's action of immediately going to the defendant and turning over cash from drug deal supports the jury's conclusion that both persons had agreed to work in concert to sell drugs); see also *United States* v. *Rodriguez,* 702 F.2d 38, 41 (2d Cir. 1983) (evidence that the defendant was present at drug scene, spent thirty to forty-five minutes walking up and down the block past vehicles where drug transactions occurred, conversed with some of the persons involved in the transactions and fled immediately after an arrest occurred was sufficient to sustain drug conspiracy conviction). We conclude, considering the evidence in total, that it was more than sufficient to support the jury's conclusion that the defendant and Green had entered into a mutual plan to sell cocaine.[5]

---

[5] "[A] reviewing court must view pieces of evidence not in isolation, but in conjunction. *United States* v. *Young,* 745 F.2d 733, 762 (2d Cir. 1984), cert. denied, 470 U.S. 1084, 105 S. Ct. 1842, 85 L. Ed. 2d 142 (1985). Viewing

## B

The defendant next claims that there was insufficient evidence to prove any overt act subsequent to the formation of the alleged agreement. A review of the transcripts and exhibits, however, shows that there was sufficient evidence to prove the three sales transactions. This is more fully discussed in part II, infra.

## C

The defendant also claims that on both the accessory charge and the conspiracy charge there was insufficient evidence from which the jury could reasonably infer the defendant's intent. In order to obtain convictions on the conspiracy and the accessory charges, the state had to prove (1) that the defendant intentionally entered into an agreement with Green to sell cocaine, (2) that the defendant intended to help Green sell cocaine, and (3) that the defendant intended to commit the crime of selling cocaine.

"Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also that they intended to commit the elements of the offense." (Internal quotation marks omitted.) *State* v. *Beccia,* 199 Conn. 1, 3–4, 505 A.2d 683 (1986). "The accessory statute, § 53-8, sets forth the element of intent as a twofold requirement: that the accessory have the intent to aid the principal and that in so aiding he intended

---

the evidence in conjunction is especially important in a conspiracy case . . . where so much of the evidence is not incriminating on its face and the jury, to infer the existence of a conspiracy, must piece together circumstantial evidence." *United States* v. *Casamento,* 887 F.2d 1141, 1156 (2d Cir. 1989), cert. denied, 493 U.S. 1081, 110 S. Ct. 1138, 107 L. Ed. 2d 1043 (1990).

to commit the offense with which he is charged. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Crump,* 201 Conn. 489, 495, 518 A.2d 378 (1986).

"The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proved by circumstantial evidence . . . and is, except in rare cases, a question of fact. . . . Intention is a mental process which, of necessity, must be proven either by the statements or the actions of the person whose conduct is being examined. . . . Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams,* 202 Conn. 349, 356–57, 521 A.2d 150 (1987).

From the evidence presented at trial, taken in the light most favorable to sustaining the verdict, we cannot say as a matter of law that the jury, as the trier of fact, could not reasonably have concluded as it did. That is, that the defendant intentionally entered into an agreement with Green to sell cocaine, that the defendant intentionally helped Green sell cocaine, and that the defendant had the intention to commit the crime of selling cocaine.

There was evidence that the defendant monitored the crime scene, conversed with Green prior to each of the drug transactions, conversed with the purchaser during the third sale, took money from Green following the two sales, warned Green when Marable drove down

the street and shouted to Green when Marable's car left the street. These facts together with all the facts set forth previously in this opinion were more than sufficient evidence for the jury to infer the requisite intention required by the conspiracy, aiding and abetting and drug selling statutes.

## II

### The Conspiracy Charge

The defendant claims that the trial court improperly charged the jury on the overt act element of the crime of conspiracy in that it did not charge that the overt act must take place after the agreement had been formed. The defendant also challenges the trial court's submission to the jury of Green's possession of the cocaine as an overt act, because there was no evidence to show that Green was not in possession of the cocaine prior to any agreement between Green and the defendant. There was neither a request to charge nor an exception taken to the judge's charge on these points, and the defendant seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).[6]

The challenged portion of the charge is as follows: "The third element of the crime the state must prove beyond a reasonable doubt is that one of the two alleged conspirators, either the defendant or Mr. Green, did

---

[6] A defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The conditions as set forth in *State* v. *Golding,* supra, need not be considered in any particular order. *State* v. *Shaw,* 24 Conn. App. 493, 497, 589 A.2d 880 (1991).

an overt act in pursuance of the conspiracy. It does not matter which one of the alleged coconspirators did the overt act. It need not be the defendant. An overt act is an open act which is done in pursuance of a design or which is a manifestation of a design or an intent. It is an act specifically intended to carry out the actor's unlawful intent to conspire to commit the crime. In this case the state claims that the overt act was the actual sale of cocaine to one or more persons. The state claims that Arnold Green's possession of cocaine was an overt act."

Both of the defendant's claims fail to satisfy the third condition of *State* v. *Golding,* supra, because the alleged constitutional violation does not clearly exist and the defendant was not clearly deprived of a fair trial. The court's instruction was proper and did not result in a deprivation of any constitutional right. Viewing the charge as a whole, it is not reasonably possible that the jury was misled to believe that it could find an overt act based on the determination that Green possessed cocaine prior to forming an agreement with the defendant to sell cocaine. The overt act must be "a subsequent independent act" that follows the formation of a conspiracy. 15A C.J.S. Conspiracy § 43 (2), p. 748. The court described the overt act as one that "is done in pursuance of a design or which is a manifestation of a design or an intent and which specifically intends to carry out the actor's unlawful intent to conspire to commit the crime." The court went on to charge the jury that it could convict the defendant if it found beyond a reasonable doubt that (1) the defendant intended to sell cocaine, (2) he agreed with Green to do so, and (3) one of them committed an overt act *in pursuance* of the conspiracy. "Pursuance" is defined as the act of pursuing, a carrying out or into effect. Webster, Third New International Dictionary. A common sense reading of these instructions plainly indicates that the

overt act must occur subsequent to the agreement underlying the conspiracy. It is impossible to pursue something that does not exist.

The defendant also claims that the court improperly instructed the jury that Green's possession of cocaine was an overt act that followed the making of the agreement. The defendant claims that there was no evidence that showed that Green came into possession of the cocaine subsequent to the making of any agreement and cites as his authority *United States* v. *Easom,* 569 F.2d 457, 459 (8th Cir. 1978).[7] We disagree. The court charged that the jury could find as an overt act Green's sale of cocaine to one or more persons and Green's possession of cocaine.[8]

The law on overt act charges was set forth in *United States* v. *Sellers,* 603 F.2d 53, 56 (8th Cir. 1979), vacated in part on other grounds, 447 U.S. 932, 100 S. Ct. 3033, 65 L. Ed. 2d 1127 (1980), modified, 628 F.2d 1085 (8th Cir. 1980). "In a conspiracy prosecution, the government is not limited to proof of only those overt acts charged in the indictment and in fact need not prove every overt act alleged. *United States* v. *Harris,* 542 F.2d 1283, 1300 (7th Cir. 1976), cert. denied, 430 U.S. 934, 97 S. Ct. 1558, 51 L. Ed. 2d 779 (1977); *United States* v. *Adamo,* 534 F.2d 31, 38 (3rd Cir.), cert. denied,

[7] The defendant's reliance on *Easom* is misplaced. In that case, the court held that it was error to instruct a jury that they could base a finding of conspiracy in part on an overt act which was committed before the existence of the conspiracy. That is not true of this case.

[8] "Obviously, where more than one overt act has been committed by any one of the alleged conspirators at any time during the course of the conspiracy, the state can, if it chooses, allege each of such acts and stand on proof of only one. The court would, of course, be obliged to charge a jury that only one of such alleged acts need be proved, together with the agreement to conspire, in order to establish the conspiracy. It is immaterial which coconspirator commits an overt act; each of them is equally bound by the overt act or acts of the others." *State* v. *Mickolyzck,* 35 Conn. Sup. 96, 98, 397 A.2d 538 (1978).

429 U.S. 841, 97 S. Ct. 116, 50 L. Ed. 2d 110 (1976). In addition, if an alleged overt act has not been proved, its submission to the jury is harmless error when the jury is presented with other overt acts in furtherance of the conspiracy which were sufficiently supported by the evidence. *United States* v. *Bletterman,* 279 F.2d 320, 322 (2d Cir. 1960); *Giardano* v. *United States,* 251 F.2d 109, 115 (8th Cir.), cert. denied, 356 U.S. 973, 78 S. Ct. 1136, 2 L. Ed. 2d 1147 (1958)." *United States* v. *Sellers,* supra.

In this case, there was sufficient evidence of sales of cocaine to go to the jury as overt acts.

## III

### THE REASONABLE DOUBT CHARGE

The defendant's last claim is that the trial court improperly charged the jury on reasonable doubt by defining it as follows. "A reasonable doubt is not a doubt raised by one who questions for the sake of raising a doubt. A reasonable doubt is not a surmise or speculation or conjecture or an imaginary doubt. A reasonable doubt is not a captious or frivolous doubt *nor is it a doubt raised by the ingenuity of counsel or by a juror* and unwarranted by the evidence; nor is it a doubt prompted by sympathy for the defendant." (Emphasis added.)

The defendant did not seek a written request to charge on reasonable doubt nor did he take an exception to the court's charge as given; Practice Book § 852; and again seeks review under *State* v. *Golding,* supra.

Similar charges were found not to be of constitutional dimension and were upheld in *State* v. *Jeffrey,* 220 Conn. 698, 719, 601 A.2d 993 (1991); *State* v. *Harvey,* 27 Conn. App. 171, 193–94, 605 A.2d 563 (1992); *State* v. *Smith,* 26 Conn. App. 279, 280–82, 600 A.2d 1036 (1991); *State* v. *Falcon,* 26 Conn. App. 259, 269–71, 600

A.2d 1364 (1991), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992); *State* v. *Turner,* 24 Conn. App. 264, 273–75, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991).

We decline to review this claim further because no clear constitutional violation exists. *State* v. *Thomas,* 214 Conn. 118, 120, 570 A.2d 1123 (1990).

The judgment is affirmed.

In this opinion the other judges concurred.