## STATE OF CONNECTICUT *v.* RICHARD A. WHITFIELD
## (7928)

SPALLONE, O'CONNELL and FOTI, Js.

Argued February 2—decision released June 5, 1990

*Denise Dishongh,* special public defender, with whom, on the brief, was *Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *John Connelly,* state's attorney, and *Marcia Smith,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, after a jury trial, of sale of a narcotic substance, to wit, heroin, in violation of General Statutes § 21a-277 (a). The defendant claims that the trial court erred in not sua sponte either declaring a mistrial or giving a curative instruction following an improper closing argument.[1] We find no error.

---

[1] The defendant raises for the first time in his reply brief and at oral arguments a "pattern of misconduct" by the prosecutor and seeks to present

The jury could reasonably have found the following facts. On March 14, 1987, four undercover narcotics officers with the Waterbury police department were assigned to the South Main Street area of Waterbury. While there, one of the officers met John Ruge, a local resident. After the officer told Ruge that he wished to purchase drugs, Ruge took him to Bishop Street where they met Nettra Brown, who was known as Foncie. They told Brown that they were looking for heroin, or dope, and she accompanied them to the corner of Cherry Street and Albert Place.

When the officer parked on Cherry Street, Brown went to an address on Albert Place and returned with the defendant, to whom she referred as Redd. The officer and Ruge each gave the defendant $20 and in return the defendant gave Ruge two glassine packets containing heroin. Ruge immediately gave the officer one of the packets of heroin. The officer held the glassine packet up as if to examine it. This was a prearranged signal that was intended to alert the other three officers that a sale had been completed. One of those officers viewed the entire transaction and, immediately after the glassine bag was raised, contacted the two remaining officers, who made a positive identification of the defendant.

The defendant claims that he was deprived of his fundamental right to a fair trial by prosecutorial misconduct during closing arguments to the jury. In particular he contends that the prosecutor's argument was improper in that it (1) distorted the state's burden of proof, (2) appealed to the jury's passions and prejudices concerning illegal drugs and thus injected irrelevant

---

other pending appeals to demonstrate a formula for argument to the jury constituting prepared remarks that buttress his claims of misconduct in final summation. We will not review a claim that has not been properly raised. *State* v. *Anderson,* 209 Conn. 622, 633, 553 A.2d 589 (1989).

considerations into the case, and (3) vouched for the credibility of the state's witnesses and the strength of the state's case.

The defendant failed to object to the prosecutor's conduct during the course of the trial, and neglected to request either curative instructions or a mistrial. Because the defendant raises this claim on appeal for the first time, we must decide, as a preliminary matter, whether this claim is reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). Our Supreme Court has held "that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of only one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

In the present case, we will review the defendant's claim to determine whether the alleged constitutional violation clearly exists and whether it deprived the defendant of a fair trial. *State* v. *Torrence,* 196 Conn. 430, 435, 493 A.2d 865 (1985).

Our Supreme Court has held that "prosecutorial misconduct of constitutional proportions may arise during the course of closing argument, thereby implicating the fundamental fairness of the trial itself; *State* v. *Williams,* 204 Conn. 523, 539, 529 A.2d 653 (1987);

*State* v. *Pelletier,* 196 Conn. 32, 33–34, 490 A.2d 515 (1985); [but] *Evans* review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial. *State* v. *Rodgers,* 207 Conn. 646, 654, 542 A.2d 1136 (1988); *State* v. *Williams,* supra, 537; *State* v. *Chace,* 199 Conn. 102, 107–108, 505 A.2d 712 (1986); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672–74, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986)." *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990).

The defendant asserts that the first of three incidents of misconduct occurred when the prosecutor allegedly shifted the state's burden of proof by commenting on alleged perjury by the defendant's witnesses. The defendant argues that his closing argument stressed mistaken identity and did not invite the prosecutor's mention of perjury.

The record indicates that during a lengthy summation, the prosecutor told the jurors that they should take the law as given by the court, that they were the ultimate finders of fact, and that it was their recollection of the facts that mattered. In arguing she discussed her recollection of the facts and stated that the defendant had presented a defense of mistaken identity. She then cautioned the jurors that although police officers' testimony should not be given additional credit simply because of their status, their training and experience should nonetheless be fully assessed by jurors when deliberating. She then commented that one of the defendant's witnesses, namely "Mr. Ruge would have us believe four policemen sat there and absolutely perjured themselves."[2]

---

[2] The relevant portion of the state's argument is as follows: "However, I think it's fair you look at the defense in this case because the people of

The second of the three alleged incidents of misconduct, the defendant claims inflamed the prejudices of the jury, occurred when the prosecutor twice referred to the heroin as "poison" and stated that the bag of heroin was in the courtroom because of the efforts of the undercover officer, otherwise "it would have been doing its damage in the arms of . . . a junkie . . . ."[3]

this state are not interested in having an innocent man found guilty. I think we should look to the defense. We had Mr. Ruge. Mr. Ruge would have us believe four policemen sat there and absolutely perjured themselves. That's the only thing we can get from Mr. Ruge's testimony. Mr. Ruge says he never got into a car on South Main Street. In fact, I think he said he never was down there. He never went up to Bishop Street. He doesn't know Nettra Brown. He never bought heroin. So we are not now just talking about mistaken identity. He didn't get on the stand and say, 'Yeah, I bought heroin, not from this guy.' He said none of this ever happened. The cops made the whole thing up, as if he would have us believe police made this up. I leave to you what you believe of Mr. Ruge's testimony and how credible you feel it is.

"When Mr. Ruge testified, I brought to your attention that he had prior criminal convictions. And I did this because I believe the law—and I believe we all believe people who commit burglaries are sometimes considered people who are not honest. By its very nature, it's that kind of crime. It's not a crime of passion. It's a crime really of dishonesty. We also think that people who commit felonies—and he had a prior felony conviction as well as his two prior burglary convictions—people commit felonies, they are sometimes considered maybe less reliable. And I submit to you because—and it is how reliable you felt any part of his testimony was.

"And you may recall Detective W. says he's known Ruge. Even Ruge admitted he knew Detective W. for a long time. [Officers] P. and D. said they knew Ruge. In fact, D. gave a perfect description, as I recall, of Ruge. Of course, they knew Ruge. Of course, they knew Nettra Brown. I don't know why Ruge would like us to believe that this was all some kind of giant lie—I think I know why he would like us to believe, but I don't know how he can expect us to. You have not one shred of evidence that the Waterbury police were out to get this man for any particular reason."

[3] The relevant portion of the state's argument is as follows: "The defendant said there is a good probability that he wasn't working that day. And I suggest to you he was working. He was on the street that day selling to Nettra Brown this bag of poison. And, ladies and gentlemen, make no doubt about it. This bag contains poison.

"I guess I'm going to finish very quickly. I do have another chance to speak to you when Miss Moore gets through. I just wanted to say one thing

The last of the alleged incidents of misconduct is the defendant's claim that the prosecutor improperly vouched for the credibility of state witnesses. This supposedly occurred during closing arguments when the prosecutor said that she did not believe "any of those officers would do such a thing," that is, take the stand and perjure himself.[4] This was in response to the defendant's argument that the officers were locked into their testimony and may have manufactured some of that testimony.[5]

---

because you're good people and you have sometimes compassion or sympathy for a person who's on trial. And I understand that. But I suggest to you that if you believe beyond a reasonable doubt that this defendant is guilty, there is no need to have any sympathy for this situation. The only reason that this bag of heroin is here today in this courtroom is because Officer D. was a member of the Waterbury Police Department. Otherwise, it would have been doing its damage in the arms of what he thought was probably a junkie, namely, Officer D. Officer D. was out there as just a junkie about to buy this little bag for $20, which is nothing but poison."

[4] The relevant portion of the state's argument is as follows: "But I must instantly take umbrage with something [defense counsel] said because I really find—as I said, I think you'll be told by Judge Lavery that you cannot believe a police officer simply because he's a police officer—but she has asked you just now to disbelieve a police officer simply because they are police officers. I believe she said they are going to take the stand and they are going to say things just because they—an arrest must be made to stick, or whatever her words were. And I do take umbrage with that. It is very difficult for me to believe that a man of twenty-seven years experience went on that witness stand and with absolute certainty identified this man, not by name—he didn't identify a name or anything else. He said that's the man I saw as Redd. That's the man who, one week before the transaction, was pointed out to him as Redd. This is a man whom he arrested. He had the warrant on this case. He arrested him on Cherry Street, not on Albert Street, but on Cherry Street because he recognized him. And now she's saying Detective Wallace took this stand and perjured himself to us.

"I take umbrage with that. I do not believe any of those police officers would do such a thing. There is no evidence in this case at all for some reason, the Waterbury Police Department has fabricated this case against this man by their own testimony. And that day they did not even know who he was."

[5] The relevant portion of the defense argument is as follows: "I have to say also that, in fact, I've known Mr. Whitfield now over a year and in the time that I've known him, he's had one very distinct characteristic. He had

We conclude that the defendant's claim does not support the clear existence of a violation of the defendant's constitutional rights or his right to a fair trial.

These unpreserved claims of prosecutorial misconduct do not fall within the category of being either blatantly egregious or part of a pattern of misconduct

---

it the day I met him. He has it today. He's had it for every day in between and that is he has a beard. It's very small, close cropped, but it's a beard. That beard is such a general characteristic that if, in fact, it had been my client that day, that would have been easily enough—there is no mention of facial hair whatsoever. The only evidence is clean shaven. If they said clean shaven, that would have been even a more particular description, then you would know you're not looking for anybody with facial hair. All they say is five ten, black male, heavy set, dark clothing. I want you to think of how many people in the world that could fit into. He has some other characteristics, but I'm going to give them the benefit of the doubt and say maybe they couldn't get those because they haven't observed him the way I've observed him. They haven't worked with him the way I've worked with him, but the facial hair is a dead giveaway, but I'm suggesting to you in the amount of time that they had, they couldn't give you any more identification than what they have because that's all they have, five ten, heavy set, black male. Not enough. And the only reason they connect Mr. Whitfield is by that phone call, I suggest.

"Now, you say to yourselves, Okay, they came in here. They only had a few seconds to identify the party, but they all sat in that box and they all pointed to this man and said he's the one I saw. Why would they do that if he wasn't the one? There are many reasons. I suggest one. These gentlemen are police officers. They have a very difficult job. I don't discredit that. They put themselves out there on the street every day on the line. God knows what may face them. But their jobs include making arrests. And once they have made that arrest, once they have viewed the person, they have to say we believe that this is the person. We have got the correct person. They have to come in and say that's the person because to say that's not the person would invalidate this whole system.

"How would it be if they came into the courtrooms, take that stand and say, 'Gee, we made a mistake?' That would waste the court's time. The prosecutor is only doing her job. She's got four people who are saying to her that's the guy. Fine, that's the guy, let's go with it. Let's bring the case to the court. Let's bring it to the jury. Let's work on it. But those police officers made that identification, made that connection based on a few seconds identification. Once they have made the connection, they have to live with it."

repeated throughout the trial. See *State* v. *Sinclair,* 20 Conn. App. 586, 598–99, 569 A.2d 551 (1990); *State* v. *Horne,* 19 Conn. App. 111, 128, 562 A.2d 43 (1989). Accordingly, we decline to review these claims of error further.

There is no error.

In this opinion the other judges concurred.