STATE OF CONNECTICUT *v.* RONELL HANKS
(13430)

STATE OF CONNECTICUT *v.* JOSE ROQUE
(13636)

O'Connell, Foti and Schaller, Js.

---

Argued June 6—decision released September 12, 1995

*Neal Cone*, assistant public defender, for the appellants (defendants).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *John C. Smriga*, assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendants appeal from the judgments of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (4),[1] assault of an employee of the department of correction in violation of General Statutes § 53a-167c (a) (1),[2] attempted escape in the first degree in violation of General Statutes § 53a-49[3] and

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person . . . ."

[2] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault of a[n] . . . employee of the department of correction . . . when, with intent to prevent a reasonably identifiable . . . employee of the department of correction . . . from performing his duty, and while such . . . employee . . . is acting in the performance of his duties, (1) he causes physical injury to such . . . employee . . . ."

[3] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for

§ 53a-169 (a) (1),[4] and rioting at a correctional institution in violation of General Statutes § 53a-179b (a).[5] The defendant Jose Roque also appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit assault in the first degree and escape in the first degree in violation of General Statutes §§ 53a-48,[6] 53a-59 and 53a-169.

The defendants first claim that the state presented insufficient evidence to support their convictions for first degree assault as accessories and attempted escape, and Roque's conviction of conspiracy. The defendants also claim that the trial court improperly denied the defendants a fair trial (1) by admitting into evidence Roque's testimony that he had previously escaped from the same jail, and (2) by allowing the prosecutor to tell the jury that an acquittal would mean that they came to the conclusion that the law enforcement officers had lied under oath. Furthermore, the defendants claim that the trial court improperly instructed the jury in several respects: (1) in focusing the jury's attention on the issue of identity rather than

commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] General Statutes § 53a-169 provides in relevant part: "(a) A person is guilty of escape in the first degree (1) if he escapes from a correctional institution . . . ."

[5] General Statutes § 53a-179b (a) provides: "A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution."

[6] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

guilt; (2) in emphasizing the defendants' interest in the outcome of the case when instructing on credibility; (3) in instructing the jury on the state's burden of proof; and (4) in failing to provide adequate instructions on the charged offenses. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 16, 1993, Correction Officer Gary DuBois was working the midnight to 8 a.m. shift in block 39A at the community correctional center in Bridgeport. The block consisted of three corridors, A7, A8 and A10. Each corridor contained twelve cells. A guard bubble was located in the middle of the block allowing the guard to observe all three corridors. The bubble contained controls for all of the corridors and cell doors in the bubble. A dayroom was located at the end of each corridor next to the guard bubble.

At 12:30 a.m., DuBois let certain inmates out of their cells to clean the block. The inmates had a mop, a mop wringer and a bucket with which to clean. At some point, an inmate, John Baldwin, called DuBois over to the cell of another inmate, Emile King, in the A8 corridor. As DuBois spoke with King, DuBois was hit from behind. Inmates Baldwin and Curtis Davis then jumped DuBois, hit him in the face and took his keys and body alarm.

Baldwin, Davis, another inmate, Patrick Nemhart, and the defendant Roque all struck DuBois. Davis hit DuBois with the mop wringer that weighed about ten pounds. Roque took a swing at DuBois and then went to the bubble. The defendant Ronell Hanks kicked DuBois and was then told by Davis and Baldwin that he should go to the front of the bubble and look out for other correction officers. Baldwin and Curtis dragged DuBois into a cell.

Officer Anthony Wilson was on duty in block 38A. He noticed a plastic bag over a corridor door and the door sliding back and forth in block 39A. He called DuBois on the telephone, but did not get an answer. Other correction officers responded when DuBois did not answer his telephone. The corridor door leading to the block had butter smeared on it, but the officers still were able to see into the block. The officers then noticed that the defendant Roque was in the guard bubble and that almost all the lights in block 39A had been turned off. The officers also heard loud booming noises.

One of the responding officers, William Jackson, saw Roque in the bubble. Jackson and Officer Orlando McGee entered block 39A. McGee saw three inmates including Hanks in the corridor. Jackson found DuBois in a cell with blood on his mouth and the left side of his jaw swollen. Jackson and McGee found Roque in another inmate's cell.

When the officers inspected the A10 dayroom they found the screen bent up on a window leading to an outside yard and two fire extinguishers that were generally kept in the bubble.

I

The defendants claim that there was insufficient evidence to sustain their convictions of first degree assault as accessories and attempted escape, and Roque's conviction of conspiracy.

"When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . . We then determine whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established

guilt beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Carpenter*, 214 Conn. 77, 78–79, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992). "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993). "The issue is whether the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." *State* v. *Ruscoe*, 212 Conn. 223, 245, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990).

## A

The defendants assert that the state did not present sufficient evidence of accessorial culpability with regard to assault in the first degree. General Statutes § 53a-8 (a) provides in relevant part that "[a] person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." It is necessary that a defendant have the mental state required for the commission of a crime while intentionally aiding another. "[M]ere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it." (Internal quotation marks omitted.) *State* v. *Crump*, 201 Conn. 489, 494, 518 A.2d 378 (1986). In the present case, there was

sufficient evidence, together with the reasonable inferences drawn therefrom, for the jury to find that the defendants were more than mere inactive companions.

The evidence presented at trial was sufficient for the jury to find beyond a reasonable doubt that the defendants were involved in the assault of DuBois. Both Baldwin and Davis testified that they attacked DuBois and pushed him into a cell. Inmate Richard Gomez testified that he saw both defendants hit DuBois at the time Baldwin and Davis were attacking him. Gomez saw Roque punch DuBois as he was being dragged to the cell. He also saw Hanks kick DuBois. Roque then went to the bubble to control the various doors and Hanks went to a corridor door to act as lookout. Intent is rarely proven by direct evidence, but is usually proven by circumstantial evidence and the inferences that can reasonably be drawn therefrom. See *State* v. *Farrar*, 7 Conn. App. 149, 155, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986). From the aforementioned facts, the jury could reasonably have found beyond a reasonable doubt that the defendants were not innocent bystanders, but rather active participants in the assault of DuBois. See, e.g., *State* v. *Tucker*, 9 Conn. App. 161, 163–65, 517 A.2d 640 (1986). The defendants' claim that there was insufficient evidence that they actively participated in the assault, therefore, fails.

B

The defendants claim that there was insufficient evidence to sustain the convictions of attempt to escape. Under § 53a-49 (a) (1), a defendant acting with the required mental state is guilty of attempt to commit a crime when he "[i]ntentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be . . . ." The acts of the defendants must go beyond the stage of mere preparation to an act done with the intent to commit

the crime. *State* v. *Green*, 194 Conn. 258, 276, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). Moreover, under § 53a-49 (a) (2), a defendant with the required mental state is guilty of such attempted crime when he "intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." "To constitute a 'substantial step,'" the conduct must be " 'strongly corroborative of the actor's criminal purpose.'" *State* v. *Green*, supra, 276. This standard "focuses on what the actor has already done and not what remains to be done." *State* v. *Lapia*, 202 Conn. 509, 515, 522 A.2d 272 (1987).

The evidence presented at trial was sufficient for the jury to find beyond a reasonable doubt that the defendants were involved in the attempt to escape. While the actions of Hanks are susceptible to many reasonable interpretations not consistent with being a part of an escape, this is not the nature of our inquiry. As long as the evidence was sufficient for the jury reasonably to have found that the actions of the defendants went beyond mere preparation and were done with the intent to commit the crime; *State* v. *Green*, supra, 194 Conn. 276; the verdict will stand.

When the four inmates attacked and subdued DuBois, they took his keys, which allowed Roque to enter the bubble containing the control panel for the entire cellblock. Jackson testified that he observed Roque in the bubble, operating switches that control the doors. Wilson testified that the cell doors and the corridor doors had to be closed in order to open the dayroom doors and that when the cell doors were opened all the other doors had to be shut. Hanks was asked to be a lookout while DuBois was pushed and locked in a cell and Roque was in the bubble controlling various doors. Hanks was

standing at a doorway located beyond the bubble when he was acting as a lookout. From this evidence, the jury could infer that Roque was controlling the doors to allow these movements to occur. In addition, a screen in the dayroom that leads directly into the courtyard was pulled halfway up. On the basis of the evidence and the reasonable inferences to be drawn therefrom, the jury reasonably could have found that the acts of the defendants were consistent with being involved in an attempted escape.

## C

The defendants claim that the evidence was insufficient to convict the defendant Roque of conspiracy to commit assault and to escape. " 'To prove the crime of conspiracy, in violation of § 53a-48, the state must establish beyond a reasonable doubt that an agreement existed between two or more persons to engage in conduct constituting a crime and that subsequent to the agreement one of the conspirators performed an overt act in furtherance of the conspiracy. . . . The state is also obligated to prove that the accused intended that conduct constituting a crime be performed.' " (Citations omitted.) *State* v. *Jones*, 35 Conn. App. 839, 846, 647 A.2d 43 (1994).

"The existence of a formal agreement between the parties, however, need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. *State* v. *Lewis*, 220 Conn. 602, 607, 600 A.2d 1330 (1991); *State* v. *Vessichio*, 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986); *State* v. *Lynch*, 21 Conn. App. 386, 392, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). Because of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. *State* v. *Vessichio*, supra [656]. Consequently, it is not necessary to estab-

lish that the defendant and his coconspirators signed papers, shook hands, or uttered the words 'we have an agreement.' *State* v. *Stellato*, [10 Conn. App. 447, 453, 523 A.2d 1345 (1987)]. Indeed, a conspiracy can be inferred from the conduct of the accused. *State* v. *Lynch*, supra, 400." *State* v. *Boykin*, 27 Conn. App. 558, 564–65, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

Here, the jury reasonably could have found that Roque participated in all acts of the assault and attempt to escape. From his actions the jury could infer that these activities were planned in advance in order to facilitate an escape. "Participation in a single act in furtherance of the conspiracy is enough to sustain a finding of knowing participation. [*United States* v. *Vanwort*, 887 F.2d 375, 386 (2d Cir. 1989), cert. denied sub nom. *Chapoteau* v. *United States*, 495 U.S. 906, 110 S. Ct. 1927, 109 L. Ed. 2d 290 (1990)]; *United States* v. *Zabare*, 871 F.2d 282, 287 (2d Cir.), cert. denied, 493 U.S. 856, 110 S. Ct. 161, 107 L. Ed. 2d 119 (1989)." *State* v. *Boykin*, supra, 27 Conn. App. 565. The four inmates attacked DuBois, disabled him, and took his keys. Roque used the keys to enter the bubble and proceeded to open and close various doors, which allowed Baldwin and Davis to place DuBois in a cell and to gain access to the dayroom. From this evidence the jury could infer that a conspiracy existed among these inmates and that Roque was a participant in the conspiracy.

## II

The defendants next claim that the trial court improperly admitted into evidence Roque's testimony that he had previously escaped from the same jail thereby denying the defendants a fair trial. The defendants argue that the admission of the evidence created an undue prejudice that tainted the verdicts rendered against Roque for attempted escape and conspiracy to escape,

and that it had a spillover effect on the attempted escape verdict rendered against Hanks. The defendants request review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

"We will not reiterate the now familiar four prongs of *State* v. *Golding*, supra, 213 Conn. 239–40, that must be satisfied in order for the defendant[s] to prevail on an unpreserved claim such as that presented here. We do, however, point out that the inability to meet any one prong requires a determination that the defendant[s'] claim must fail. Id." *State* v. *Ricketts*, 37 Conn. App. 749, 761, 659 A.2d 188 (1995). We conclude that the defendants have failed to establish the third prong of *Golding*, that "the alleged constitutional violation clearly exists and clearly deprived [them] of a fair trial . . . ." *State* v. *Golding*, supra, 239–40.

The evidence at issue was introduced through the direct examination of Roque and was not objected to by Hanks. Ordinarily, error induced by an appellant cannot be grounds for reversal and will not be reviewed. *State* v. *Ross*, 189 Conn. 42, 47, 454 A.2d 266 (1983). Even induced error, however, if constitutional in magnitude, may warrant review under *Evans-Golding*. *State* v. *Hinckley*, 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985).

"The law regarding admission of prior criminal acts is clear. 'As a general proposition, evidence of guilt of other crimes, because of its prejudicial nature, is inadmissible to prove that a defendant is guilty of the crimes with which he is charged. *State* v. *Holliday*, 159 Conn. 169, 172, 268 A.2d 368 (1970); *State* v. *Harris*, 147 Conn. 589, 599, 164 A.2d 399 (1960). Such evidence is admissible for other purposes, however, such as when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity, to name some exceptions to the rule. *State* v. *Brown*, 169 Conn. 692, 701,

364 A.2d 186 (1975). The trial judge, however, must determine in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency. *State* v. *Moynahan,* [164 Conn. 560, 597, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973)]; *State* v. *Holliday,* supra, 173. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. *State* v. *Hauck,* 172 Conn. 140, 144, 374 A.2d 150 (1976); *Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d 62 (1970); 1 Wharton, Criminal Evidence (13th Ed.) 241.' *State* v. *Turcio,* 178 Conn. 116, 129, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980)." *State* v. *Baldwin,* 224 Conn. 347, 354–55, 618 A.2d 513 (1993).

In this case, the evidence of the prior escape was used by the state to show the intent of Roque and his connection with a conspiracy to escape and with the attempted escape. Because intent is almost always proved, if at all, by circumstantial evidence, prior misconduct evidence, where available, is often relied on. See *State* v. *Tucker,* 181 Conn. 406, 415, 435 A.2d 986 (1980). It is true that the misconduct evidence introduced was remarkably similar both in kind and location to the evidence before the jury in this trial. These factors, however, make the evidence that much more probative. *United States* v. *Jones,* 913 F.2d 1552, 1566 (11th Cir. 1990) (probative value of evidence heightened by similarity); *United States* v. *Dunbar,* 614 F.2d 39, 42 (5th Cir.), cert. denied, 447 U.S. 926, 100 S. Ct. 3022, 65 L. Ed. 2d 1120 (1980) (virtually identical evidence "highly relevant" on intent issue). The testimony of Roque's escape from the cellblock was introduced for a valid purpose within the guidelines of *State* v. *Holliday,* supra, 159 Conn. 173. See *State* v. *Baldwin,* supra, 224 Conn. 355.

Intent, or any other essential element of a crime, is always at issue unless directly and explicitly admitted before the trier of fact. *State* v. *Geyer*, 194 Conn. 1, 17–18, 480 A.2d 489 (1984) (*Shea, J.*, concurring); *State* v. *Johnson*, 190 Conn. 541, 550, 461 A.2d 981 (1983). Because intent was not admitted in this case, the trial court could reasonably have determined that the evidence had significant probative value to prove intent.

Once the prior bad acts evidence has been found relevant, its prejudicial impact must be evaluated. "The problem is thus one of balancing the actual relevancy of the other crimes evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Internal quotation marks omitted.) *State* v. *Sierra*, 213 Conn. 422, 435, 568 A.2d 448 (1990). Here, it was Roque who opened the door by testifying to the prior escape on direct examination. The evidence of prior criminal conduct was introduced only in connection with the conspiracy and attempted escape counts on the issue of intent. In addition, the trial court gave a specific limiting instruction to the jury. "In other words in short, you cannot convict either one of these gentlemen of this conduct simply because they have been previously convicted before." We conclude that the trial court did not abuse its discretion in determining that the probative value of the testimony outweighed any prejudicial effect it might have had on the jury. The defendants, therefore, cannot prevail on this claim on the basis of *State* v. *Golding*, supra, 213 Conn. 239–40.

### III

The defendants next claim that the trial court improperly allowed the prosecutor to tell the jurors that an acquittal would mean that they came to the conclusion that law enforcement officers had lied under oath, thereby denying the defendants a fair trial. Conceding

that these claims were not properly preserved at trial, the defendants ask for review of these issues under *State* v. *Golding*, supra, 213 Conn. 239–40. We will examine the defendants' claim to determine whether the alleged constitutional violation clearly exists and whether it deprived the defendants of a fair trial. *State* v. *Torrence*, 196 Conn. 430, 435, 493 A.2d 865 (1985).

Our Supreme Court has held that although "prosecutorial misconduct of constitutional proportions may arise during the course of closing argument, thereby implicating the fundamental fairness of the trial itself; *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987); *State* v. *Pelletier*, 196 Conn. 32, 33–34, 490 A.2d 515 (1985) . . . *Evans* review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial." *State* v. *Somerville*, 214 Conn. 378, 393, 572 A.2d 944 (1990).

Our review of the record discloses that the remarks now challenged represent an isolated instance of alleged misconduct, unrepresentative of a pattern of conduct repeated throughout the trial. Because the defendants' claim of alleged misconduct challenges one isolated comment made during closing argument, they cannot establish the clear existence of a violation of their constitutional rights or their right to a fair trial. Because the unpreserved claim of prosecutorial misconduct was neither blatantly egregious nor part of a pattern of misconduct repeated throughout the trial; see *State* v. *Whitfield*, 21 Conn. App. 622, 628–29, 575 A.2d 1046, cert. denied, 216 Conn. 808, 580 A.2d 66 (1990); we decline to review this claim. See *State* v. *Castonguay*, 218 Conn. 486, 508, 590 A.2d 901 (1991); see also *State* v. *Williams*, supra, 204 Conn. 537.

## IV

The defendants next assert that the trial court improperly instructed the jury (1) in focusing the jury's attention on the issue of identity rather than guilt, (2) in emphasizing the defendants' interest in the outcome of the case when instructing on credibility, (3) on the state's burden of proof, and (4) in failing to provide adequate instructions on the charged crimes. Conceding that these claims were not properly preserved at trial, the defendants ask for review of these issues under *State* v. *Golding*, supra, 213 Conn. 233.

In reviewing a jury charge, the charge must be read as a whole. Individual instructions are not to be read in artificial isolation from the overall charge. *State* v. *Holmquist*, 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). The test to be applied is whether the charge considered as a whole presents the case to the jury so that no injustice will result. *State* v. *Roy*, 173 Conn. 35, 40, 376 A.2d 391 (1977). An examination of the charge as a whole fails to indicate that it was unfair or misleading in any way.

## A

The defendants claim that the trial court improperly instructed the jury in focusing its attention on the issue of identity rather than guilt. The defendants argue that the trial court improperly focused the jurors' attention on the issue of identity when it instructed the jury that "[t]he issue in this case is identification of each defendant as the perpetrator of the crime." We find that this sentence is taken out of context and when the charge is viewed as a whole it "fairly presented the case to the jury in such a way that no injustice was done to the defendant." *State* v. *Storlazzi*, 191 Conn. 453, 467, 464 A.2d 829 (1983).

The trial court emphasized on a number of occasions that it was within the jury's province to find the facts. In addition, the court explained to the jury the state's burden to prove each element of the charged offenses beyond a reasonable doubt. Although the court commented on the evidence in such a way that it focused the jury's attention on the issue of identity, it did so because identity was a factual issue contested at trial. See *State* v. *Dolphin*, 195 Conn. 444, 450, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). "A court's charge is not to be examined in a vacuum . . . [but] is to be viewed in the context of the factual issues raised at the trial." *State* v. *Kurvin*, 186 Conn. 555, 558, 442 A.2d 1327 (1982).

The portion of the trial court's charge that preceded the disputed sentence is as follows: "A significant issue in this case—that's a poor choice of words—a serious as well as all the other essential elements of the crimes as I will give you; but one . . . threshold issue is whether or not these accused participated in the conduct charged against them resulting in the assault on DuBois, the corrections officer, and rioting and the conspiracy to escape; commit that assault is their identification, is either one. So you have to go through the evidence and determine that issue. Has it been demonstrated beyond a reasonable doubt that these are the two accused who did participate in this conduct."

The court went on to stress that the state had the burden to prove identity and all other elements of the crimes beyond a reasonable doubt. We conclude that the charge as a whole presented the case to the jury in such a manner that no injustice was perpetrated. *State* v. *Derrico*, 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

## B

The defendants claim that the trial court improperly instructed the jury in emphasizing the defendants' interest in the outcome of the case when instructing on credibility. In its charge to the jury, the trial court instructed that a witness' interest in the outcome of the case was a proper factor for the jurors to consider when assessing that witness' credibility. In addition, the court instructed the jury that the defendants' interest in the outcome of the case was also a consideration.

The rule is well settled in Connecticut that the court may advise the jury that in weighing the credibility of an accused's testimony it can consider his interest in the outcome. *State* v. *Bennett,* 172 Conn. 324, 335, 374 A.2d 156 (1977). The propriety of this charge can be seen by taking into consideration the charge as a whole. The court gave several alternative formulations as to how the testimony of the accused was to be evaluated. The court instructed the jury to "apply the same principles [by] which testimony of every witness is tested" and that "an accused person having taken the witness stand stands before you just like any other person that is entitled to the same considerations." If we take these statements together, the instructions are not prejudicial to the defendants. We conclude that the court's charge was proper with respect to the considerations the jury should have in mind in testing the credibility to be given to the defendants' testimony.

## C

The defendants raise several claims pertaining to the language used by the trial court in its instructions on reasonable doubt. Because claims almost identical to the defendants' claims have been previously reviewed and rejected by this court and our Supreme Court, a summary review is sufficient.

The defendants' "valid reason" claim is rejected as it has been held constitutional numerous times. *State* v. *Ellis*, 232 Conn. 691, 705, 657 A.2d 1099 (1995); *State* v. *Williams*, 231 Conn. 235, 254, 645 A.2d 999 (1994). Similar language to "which concern you in everyday life you would pay some heed" has been upheld several times as well. See, e.g., *State* v. *Ellis*, supra, 705; *State* v. *Williams*, supra, 231 Conn. 254 n.22; *State* v. *Gomez*, 225 Conn. 347, 353, 622 A.2d 1014 (1993). The "real doubt, honest doubt" instruction has also been upheld by this court and our Supreme Court. *State* v. *Findlay*, 198 Conn. 328, 348, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Lamme*, 19 Conn. App. 594, 607, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990). The court's instruction that the jury need not be concerned with the punishment in this case has also been upheld. *State* v. *Colon*, 37 Conn. App. 635, 639, 657 A.2d 247 (1995); *State* v. *Doehrer*, 200 Conn. 642, 654, 513 A.2d 58 (1986).

The defendants also claim that the trial court's use of the word "reasonable" imposed a burden on the defendants to present a defense. Because the issues are inadequately briefed, we decline to review them. *State* v. *Yopp*, 35 Conn. App. 740, 750, 646 A.2d 298 (1994); *State* v. *Rumore*, 28 Conn. App. 402, 410–11, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). In the absence of a sufficient review and analysis of the case law applicable to this case, we have no basis on which to determine whether the defendants' due process rights were violated. See *State* v. *Tweedy*, 219 Conn. 489, 510 n.17, 594 A.2d 906 (1991); *State* v. *Merritt*, 36 Conn. App. 76, 97, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995); see also Practice Book § 4065.

Finally, the cumulative effect of these jury instructions does not merit reversal. "Our Supreme Court has rejected a claim that a group of instructional claims of

error, none of which was found to constitute reversible error, should be aggregated to form a separate basis for a claim of a constitutional violation of a right to a fair trial." *State* v. *Reddick*, 33 Conn. App. 311, 338, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994).

## D

The defendants claim that the trial court improperly instructed the jury in failing to provide adequate and understandable instructions on the charged crimes. The defendants focus on a portion of the charge regarding the assault and escape charges. That portion of the charge is as follows: "Now in regard to assault in the first degree, assault of a department of corrections employee, and attempted escape in the first degree, it makes no difference whether Officer DuBois' injuries were actually inflicted . . . by the defendant or either one of them, or by any other participant in the crime. Or whether the defendant, either one of them, was trying to escape. If the defendant was engaging with others in a common purpose to carry out an activity constituting a crime as I will charge you."

We conclude that any confusion that may have been caused by this instruction was cured by the court's subsequent instructions. We note that "[a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Allen*, 216 Conn. 367, 387, 579 A.2d 1066 (1990). We conclude that the charge viewed in its entirety presented the case to the jury in such a manner that no injustice was perpetrated. *State* v. *Derrico*, supra, 181 Conn. 170. The defendants, therefore, cannot prevail

on these claims of instructional error on the basis of *State* v. *Golding*, supra, 213 Conn. 239–40.

The judgments are affirmed.

In this opinion the other judges concurred.