## STATE OF CONNECTICUT *v.* SCOTT ELIJAH
## (14733)

Foti, Lavery and Spear, Js.

Argued June 11—officially released August 27, 1996

*John R. Williams*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction rendered, after a jury trial, of possession of cocaine with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] possession of cocaine in violation of General Statutes § 21a-279 (a),[2] and conspiracy to sell cocaine in violation of General Statutes §§ 53a-48 (a)[3] and 21a-278 (b). The defendant claims that the trial court

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

improperly instructed the jury. He also claims that the evidence was insufficient to convict him of any of the charges. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On June 29, 1991, Detective Hilden Wright of the New Haven police department began surveillance of a multifamily house located at 221½ Winthrop Avenue in New Haven. From his vantage point, he had a clear view of the entrance. At some time in the early afternoon, he observed a blue Mercury Lynx with New York license plates parked in front of the building. Thereafter, Wright saw the defendant and another black male, Jefferson Jackson, enter the automobile and drive away. Approximately thirty minutes later the car returned and parked in the same spot in front of the building. The defendant and Jackson exited the car and entered the building. Both were dressed in full-length pants and shirts. One of them was carrying a brown paper bag. After additional surveilance of approximately twenty minutes, Wright left to return to police headquarters. Approximately twenty minutes after leaving, Wright returned with other law enforcement officers of the narcotics unit to execute a search and seizure warrant for apartment five of that building.

The officers knocked on the door to apartment five and one of them yelled, "Police with a search warrant." They could hear the sounds of running footsteps and concluded that evidence was being destroyed. They battered down the door, which had been fortified inside by two-by-fours placed across it. The door opened into the living room, to the left of which was the kitchen, open to view; past the kitchen was a bathroom on the left, a bedroom on the right, and a second bedroom at the end of a short hallway.

As the police entered, they observed both the defendant and Jackson bare-chested and wearing only boxer

shorts. The defendant was stopped going out the back door, which had a deadbolt. Jackson, who had a surgical mask around his neck, was seized as he ran from the kitchen to the back of the apartment. The defendant supplied the police with the keys to the blue Mercury parked outside, and said that he lived elsewhere, giving them a false New Haven address.

On a table in the kitchen, the police seized high velocity ammunition and .22 caliber ammunition, a box of glassine packets, a bottle of inositol, adhesive tape, a box of utility blades, cutting blades, a razor blade with cocaine residue, a plastic bag with cocaine residue, a plastic gram scale with cocaine residue, a glass bowl with cocaine residue, a glass plate with cocaine residue, a large plastic bag containing a white, rock-like material that was pure cocaine, forty-five plastic bags containing cocaine, and fifty glassine bags containing cocaine. In a bathroom drawer police discovered a glassine package containing powdery material. On a table in the living room, a black address book was found with names and addresses, including the name "Scott," and two sheets of paper covered with numbers.

The glassine packets found on the kitchen table are commonly used to package and sell narcotics, the inositol is mixed with raw narcotics to add bulk for purposes of sale, the razor blades are used to handle the inositol and narcotics, the adhesive tape is used to secure the packaging of narcotics and the surgical mask worn by Jackson is used to avoid inhaling the dust or fumes of the narcotics. The numbers on the two sheets of paper are consistent with narcotics transactions, i.e., quantity of narcotics sold and moneys received. Each of the fifty glassine packets had a street value of $20. It was apparent that narcotics were being cut and bagged when the police entered.

I

The defendant claims that the trial court improperly instructed the jury on the element of possession for purposes of proof on the first two counts. He posits that the instruction given could reasonably have led the jury to conclude that mere physical proximity, coupled with knowledge of the presence of the drugs, was sufficient to make the defendant a possessor.

Our standard of review concerning claims of instructional error is well settled. "[J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . ." (Citations omitted; internal quotation marks omitted.) *Hall* v. *Burns*, 213 Conn. 446, 475, 569 A.2d 10 (1990). The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. *Lemonious* v. *Burns*, 27 Conn. App. 734, 740, 609 A.2d 254, cert. denied, 223 Conn. 915, 614 A.2d 823 (1992). We must review the charge as a whole to determine whether it was correct in law and sufficiently guided the jury on the issues presented at trial. *State* v. *Coleman*, 35 Conn. App. 279, 292, 646 A.2d 213 (1994).

Our review of the charge in its entirety leads us to conclude that the trial court's instruction was an adequate statement of the law on the element of possession. The court instructed on the element of possession for purposes of the crimes of possession of cocaine and possession of cocaine with intent to sell as follows: "The first element is that the defendant had possession of a substance. This element of possession means that the defendant knew of its presence and that the defendant actually had the substance on his person, although

that is only one form of possession. The word 'possession' as used in this statute has no technical meaning. As I have said, it does not mean that one must have the illegal substance upon his person. Rather, a person who, although not in actual possession, knowingly has the power and the intention at a given time to exercise dominion or control over a thing is deemed to be in constructive possession of that item. It means having something under one's control or dominion. As long as the substance is or was in a place where the defendant could, if he wishes, go and get it, it is in his possession and that possession is illegal if the defendant knew of the unlawful character of the substance and knew of its presence.

"As you ordinarily speak of things, we possess a thing which we have under our immediate control or dominion. You possess the articles on your person because they obviously are within your immediate control or dominion. I possess a book on the desk in front of me even though it actually belongs to the state of Connecticut simply because it's before me and subject to my control and dominion. I possess a briefcase which happens to be in the chambers because it is under my control. Moreover, possession may be jointly held as where two or more persons have dominion and control over the articles involved and where such persons are acting at the time pursuant to a common purpose. In other words, possession may be personal to more than one individual at any given time."

The defendant's counsel, in noting his exception to this portion of the charge, stated: "Your Honor indicated that it was necessary that the defendant exercise dominion and control and that he had both the ability and the intent to exercise control, but then Your Honor gave the jury as a practical illustration, that is, if the substance was in a place where he . . . 'could go and get it' . . . and that's obviously not the definition of

possession, or possession and control which is provided by the law . . . . The mere ability to go and get it is not enough. And that's an erroneous instruction."

The trial court properly instructed as to the element of possession that the defendant was required not only to know of the presence of narcotics, but also that he intended to and did exercise dominion and control over the drugs. Identical or very similar language as used initially by the trial court dealing with the element of possession, actual or constructive, of a narcotic substance has been approved by our Supreme Court. See *State* v. *Williams*, 169 Conn. 322, 335 n.2, 363 A.2d 72 (1975).[4]

The defendant specifically challenges the court's instruction that the defendant would be in possession of the narcotic substance if it was located in a place where "the defendant could, if he wishes, go and get it," being aware of its presence and unlawful character. He argues that this could improperly allow the jury to convict him solely on his knowingly being in the physical proximity of the drugs. We agree that if the narcotics are found in a place where the defendant does not have exclusive possession, the mere presence of the defendant near the contraband, without more, is insufficient to support an inference of possession. *State* v. *Brunori*, 22 Conn. App. 431, 436, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). We also agree that that portion of the instruction dealing with the ability to "go and get" the contraband, if taken alone, would be insufficient to define possession. In viewing the charge in its entirety, however, the concept and the necessity of the ability to control the disposition of the narcotics, by the exercise of dominion and control as

---

[1] The trial court's instruction spoke both of "dominion *and* control," as well as the standard phrase "dominion *or* control." See *State* v. *Williams*, supra, 169 Conn. 322; see also *State* v. *Hill*, 201 Conn. 505, 518 A.2d 388 (1986).

connected with constructive possession, was clearly conveyed to the jury. The court specifically equated possession with dominion or control by stating: "We possess a thing which is under our immediate control or dominion," and "[y]ou possess the articles on your person because they obviously are within your immediate control." We therefore conclude that it is not reasonably possible that the jury was misled into equating possession with mere physical proximity.

The defendant also argues that the trial court's instructions did not sufficiently refer to the mental element necessary for constructive possession. While the trial court's explanation and illustrations of constructive possession did not set forth such a necessary mental element, the instruction sufficiently charged that such involves "knowingly" having the power and intention at a given time to exercise dominion or control. The trial court also told the jury that such a mental element requires that joint possessors must act "pursuant to a common purpose."

Our review of the charge as a whole convinces us that the jury was given a clear understanding of the elements of the crimes charged and the proper guidance to determine if those elements were present. *State* v. *Avila*, 166 Conn. 569, 574, 353 A.2d 776 (1974). The jury was not misled by the charge, which was correct in law and sufficient to guide the jury on the issues presented.

## II

The defendant claims that there was insufficient evidence to sustain his convictions. He maintains that the state failed to prove either an agreement or an overt act in respect to the conspiracy charge. He also argues that there was insufficient evidence of constructive possession of cocaine because the state merely proved he was knowingly in a room where cocaine was present.

We utilize a two part analysis when reviewing a challenge to the sufficiency of evidence. "First, we construe the evidence in the light most favorable to sustaining the verdict . . . . Second, we determine whether from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993). " 'In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct.' " *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

" 'To prove the crime of conspiracy, in violation of § 53a-48, the state must establish beyond a reasonable doubt that an agreement existed between two or more persons to engage in conduct constituting a crime and that subsequent to the agreement one of the conspirators performed an overt act in furtherance of the conspiracy. . . . The state is also obligated to prove that the accused intended that conduct constituting a crime be performed.' " (Citations omitted.) *State* v. *Jones*, 35 Conn. App. 839, 846–47, 647 A.2d 43 (1994).

"The existence of a formal agreement between the parties, however, need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. *State* v. *Lewis*, 220 Conn. 602, 607, 600 A.2d 1330 (1991); *State* v. *Vessichio*, 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S.

1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986); *State* v. *Lynch*, 21 Conn. App. 386, 392, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). Because of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. *State* v. *Vessichio*, supra. Consequently, it is not necessary to establish that the defendant and his coconspirators signed papers, shook hands, or uttered the words 'we have an agreement.' *State* v. *Stellato*, [10 Conn. App. 447, 453, 523 A.2d 1345 (1987)]. Indeed, a conspiracy can be inferred from the conduct of the accused. *State* v. *Lynch*, supra, 400." *State* v. *Boykin*, supra, 27 Conn. App. 564–65.

Further, a jury is free to infer from the actions of the defendant and his coconspirator, and from the circumstances presented as evidence in this case, that the activity involving the cocaine was planned in advance. See *State* v. *Hanks*, 39 Conn. App. 333, 343, 665 A.2d 102, cert. denied, 235 Conn. 926, 666 A.2d 1187 (1995). The jury could, from the evidence presented, and the reasonable inferences drawn from that evidence, conclude that the defendant wilfully participated in the narcotics activities of the conspiracy with knowledge of its illegal ends. From the evidence presented at trial, taken in the light most favorable to sustaining the verdict, we cannot say as a matter of law that the jury could not reasonably have concluded as it did. The jury was free to infer an agreement from the concerted actions of the defendant and Jackson in coming and going, and from the circumstances in which they were found.

A jury can infer from a defendant's actions that activities were planned in advance to facilitate the crime. *State* v. *Hanks*, 39 Conn. 333, 343, 665 A.2d 102 (1995). Participation in the act itself may be sufficient to allow the jury to infer the conspiracy from that conduct. Id.

Jurors are expected to employ common sense and to draw on everyday experiences during deliberations. From the evidence of the circumstances as they existed and the interaction between Jackson and the defendant, it is not unreasonable for the jury to have found that the two did not decide to cut, package and distribute cocaine on the spur of the moment, that one did not spontaneously say to the other, "While you are here, take off your clothes and help me cut and package this cocaine." It is more probable that the jury reasonably found that the two had previously agreed or arranged to be there to do the acts. The jury was free to conclude that the two were in their underwear, not because they were warm, but because it is much easier to shower off evidence of drugs from one's body than to remove that residue from outer clothing. We cannot find that the jury's conclusion that an agreement existed was based on insufficient evdence or was unreasonable based on the evidence presented. We conclude that the evidence was sufficient to allow the jury to find proven, beyond a reasonable doubt, that an agreement existed between the defendant and Jackson to engage in the crime.

An overt act is an essential ingredient of the crime of conspiracy; it may be committed by either coconspirator. *State* v. *Walton*, 227 Conn. 32, 48, 630 A.2d 990 (1993). The offense of possession of narcotics with intent to sell was a principal object of the conspiracy charged, and that crime was the overt act. "Possession of the drugs is sufficient for proof of the overt act in a conspiracy. [Id.]" *State* v. *Goodrum*, 39 Conn. App. 526, 540, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995).[5]

---

[5] Conviction of both conspiracy to sell and possession with intent to sell does not constitute double jeopardy. *State* v. *Walton*, supra, 227 Conn. 40–54.

We conclude that there was sufficient evidence for the jury to have found the necessary agreement and overt act in furtherance of the conspiracy.

The defendant also claims that the evidence was insufficient to convict him because the state did not prove that he "possessed" the cocaine. The state's burden is to prove beyond a reasonable doubt that the defendant knew the character of the contraband, knew of its presence and exercised dominion and control over it. *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985). Where, as here, the cocaine was not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. See, e.g., *State* v. *Brunori*, supra, 22 Conn. App. 431; *State* v. *Santiago*, 17 Conn. App. 273, 552 A.2d 438 (1989); *State* v. *Melillo*, 17 Conn. App. 114, 550 A.2d 319 (1988). As we discussed previously, the state presented evidence sufficient to establish possession. The state did not merely present evidence of proximity and knowledge, but also evidence from which the jury could draw reasonable inferences to find the required dominion or control. We conclude that the state sustained its burden to offer sufficient evidence for a jury reasonably to have found that the defendant possessed the cocaine.

The judgment is affirmed.

In this opinion SPEAR, J., concurred.

LAVERY, J., dissenting. I agree with the conclusions reached by the majority concerning the trial court's instruction to the jury and the defendant's convictions of violating §§ 21a-278 (b) and 21a-279 (a). I respectfully disagree with the majority opinion as to the conviction for conspiracy to sell cocaine. It is well settled in Connecticut that the crime of conspiracy requires the presence of an agreement and a subsequent overt act in furtherance of the conspiracy. General Statutes § 53a-

48 (a). I believe that there is insufficient evidence from which a jury could infer a previous agreement between the defendant and Jackson to support a conviction for conspiracy to sell cocaine.

The majority opinion relies on *State* v. *Vessichio*, 197 Conn. 644, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986), for the proposition that a conspiracy conviction is usually based on circumstantial evidence because of the secretive nature of the crime. The majority also contends that a conspiracy can be inferred from the conduct of the accused. See *State* v. *Lynch*, 21 Conn. App. 386, 392, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). In this case, however, there is insufficient circumstantial evidence to infer that there was a prior agreement between the defendant and Jackson.

The only evidence presented to the jury was the police observing the defendant and another male leaving the premises and arriving later carrying a brown paper bag into the building. Subsequent to this observation, the police entered the apartment and found illegal drugs and assorted paraphernalia as well as the defendant and Jackson in their underwear. These facts are not sufficient to uphold a conviction for conspiracy to sell narcotics.

This court has reversed convictions for conspiracy to sell narcotics on facts similar to those in this case. See *State* v. *Goodrum*, 39 Conn. App. 526, 540–41, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995). In *Goodrum*, the police observed a defendant entering his brother's premises carrying a brown paper bag. The police also found drugs and paraphernalia in the brother's apartment. We concluded in *Goodrum* that "[m]ere presence at the scene of a crime, even with knowledge of the crime, is insufficient to establish guilt of a conspiracy." Id., 540. In this case the police found

the defendant and Jackson in their underwear amidst illegal drugs, yet, as in *Goodrum*, there is no probative evidence from which a *prior* agreement between the defendant and another person could be inferred.

I would reverse the judgment of the trial court with direction to vacate the conviction for conspiracy to sell cocaine. I would affirm the judgment of the trial court on all other grounds.