# STATE OF CONNECTICUT *v.* ANTONIO FORDE
## (AC 17636)

Lavery, Landau and Hennessy, Js.

Argued November 10, 1998—officially released March 9, 1999

*Jeanne M. Zulick*, special public defender, for the appellant (defendant).

*Michael L. Regan*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Antonio Forde, appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] sale of a narcotic substance by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and conspiracy to sell narcotics in violation of General Statutes §§ 53a-48 (a)[2] and 21a-278 (b). The defendant claims that (1) the trial court improperly refused to grant his motion for a judgment of acquittal, which he based on his claim of insufficiency of the evidence, and (2) the prosecutor's closing argument, which included comments on the defendant's failure to testify and on facts not in evidence and his personal opinion as to the guilt of the defendant, denied the defendant his right to a fair trial. We affirm the judgment of the trial court.

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

The jury reasonably could have found the following facts. On October 25, 1996, Officers Corey Poore and Robert Blanch of the Norwich police department received a report of alleged drug activity at the intersection of Lake and Pond Streets in Norwich, an area known for drug activity. After receiving the report, Poore and Blanch, who were patrolling the area on bicycles, responded and took up surveillance behind a fence in the backyard of a house on Boswell Avenue. This surveillance point allowed Poore and Blanch to see the intersection, where they observed three males sitting on a stone wall located approximately thirty-five to fifty yards from their surveillance point.

Within a minute of the officers' arrival at the surveillance point, one of the three men left the area.[3] Soon thereafter, a male between twenty-five to thirty years of age drove up in a pickup truck. The driver stopped the truck next to the remaining two males. One of the subjects, later identified as the defendant, approached the passenger side of the truck. The officers observed the defendant reach into the open passenger side window and take money from the driver. When he received the money, the defendant made a subtle, waving motion to the second male, later identified as Wayne Scott, who was then standing approximately ten feet from the defendant. Thereafter, Scott walked toward part of the stone wall that was beyond the officers' view. The officers lost sight of Scott for less than ten seconds, and then Scott returned to the driver's side of the pickup truck and handed an item, which the officers could not identify from their vantage point, to the driver. The pickup truck then continued down the street and left the area.

After the officers had witnessed what they believed to be a "hand-to-hand narcotics transaction," Poore called

---

[3] That man remains unidentified.

the police dispatcher regarding the pickup truck and requested a police cruiser for assistance; the pickup truck, however, was never stopped.

Poore and Blanch then mounted their bicycles, rode to the area and confronted the defendant and Scott. The defendant and Scott were sitting in the spot where they had been prior to the arrival of the pickup truck. A police cruiser arrived at the same time as the officers. Poore and Blanche noticed that the defendant was still holding money in his hand, which was later seized and determined to be $460.[4]

After the defendant and Scott were detained, Blanch went to the section of the wall where he and Poore had momentarily lost sight of Scott and retrieved a paper bag holding small plastic containers with caps. The vials contained a white rock-like substance that tested positive for cocaine.[5]

The defendant was arrested and subsequently tried before a jury in June, 1997. During trial, an expert witness for the state, Sergeant Jeffrey Hotsky of the Connecticut state police, testified that possession of thirty-two vials of crack cocaine was consistent with possession with intent to sell as opposed to possession for personal use. He stated that it is common for street level drug dealers to have more than one person involved in sales, with one individual handing the money and the other individual handing the drugs. Hotsky also testified that dealers would keep only a small quantity of drugs on their person, while the bulk of the drugs were hidden nearby.

[4] Scott was later searched at the police station, but no money was found on his person.

[5] The toxicology laboratory of the Connecticut department of public health tested the substance in fifteen of the thirty-two vials, which was subsequently determined to be 97 percent pure freebase, or crack, cocaine. The paper bag containing the vials had Scott's fingerprint on it.

At the close of the state's case, defense counsel made an oral motion for a judgment of acquittal on all three counts.[6] The trial court denied the motion. The defendant was convicted on all charges, and this appeal followed.

## I

The defendant claims that the trial court improperly refused to grant his motion for a judgment of acquittal. Specifically, the defendant argues that the evidence was legally insufficient to establish guilt of any of the charges beyond a reasonable doubt. We disagree.

"This court's review of claims relating to the sufficiency of the evidence to sustain a criminal conviction is governed by a well established standard of law. Whether we review the findings of a trial court or the verdict of a jury, our underlying task is the same. . . . We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . *State* v. *Joyner*, 225 Conn. 450, 455, 625 A.2d 791 (1993)." (Internal quotation marks omitted.) *State* v. *Knight*, 50 Conn. App. 109, 112, 717 A.2d 274 (1998).

## A

The first question before us is whether, from the facts presented at trial, it was reasonable for the jury to determine that the defendant had constructive possession of the cocaine that was seized from the stone wall, thereby supporting the defendant's conviction for

---

[6] The defendant did not present any evidence.

possession with intent to sell in violation of General Statutes § 21a-278 (b).[7] "General Statutes § 21a-278 (b) requires proof that the defendant possessed a narcotic substance. To establish possession, the state must show beyond a reasonable doubt that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985); see also *State* v. *Brunori*, 22 Conn. App. 431, 435–36, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, *unless* there are other incriminating statements or circumstances tending to buttress such an inference. . . . *State* v. *Alfonso*, [supra, 633]. Thus, the presence of the defendant near the contraband without more is insufficient to support an inference of possession. *State* v. *Brunori*, supra, 436." (Emphasis added; internal quotation marks omitted.) *State* v. *Ober*, 24 Conn. App. 347, 351–52, 588 A.2d 1080, cert. denied, 219 Conn. 909, 593 A.2d 134, 135, cert. denied, 502 U.S. 915, 112 S. Ct. 319, 116 L. Ed. 2d 260 (1991).

In this case, evidence was presented that included sufficient indicia of ownership on the part of the defendant to support the jury's determination. Poore and

---

[7] In support of his claim, the defendant cites three cases, *In re Benjamin C.*, 22 Conn. App. 458, 577 A.2d 1117 (1990), *State* v. *Brunori*, 22 Conn. App. 431, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990), and *People* v. *Russell*, 34 N.Y.2d 261, 357 N.Y.S.2d 415, 313 N.E.2d 732 (1974). We agree with the state's assertion that the defendant's reliance on these cases is misplaced because these cases are factually dissimilar from this case. *Brunori* and *Russell* involve scenarios in which the defendant drops something that is later determined to be narcotics. In *In re Benjamin C.*, the respondent minor had physical possession of narcotics at some point during police surveillance. Here, the defendant never had actual possession of the drugs, thereby distinguishing this case from the three relied on by the defendant.

Blanch observed the defendant and Scott seated on a wall in an area known for active drug trafficking. After a pickup truck pulled up, the police observed the defendant approach the truck and take what appeared to be money from the unidentified driver and put it with money that he took out of his pocket. Poore and Blanch then observed the defendant signal to Scott who then went over to the wall on which they had been seated. Scott returned to the pickup truck and handed an unidentified item to the driver, who then left the scene.

Believing, on the basis of their experience, that a drug sale had occurred, the police confronted and arrested the defendant and Scott. The defendant was found to have $460 on his person.[8] In addition, the officers retrieved a paper bag containing thirty-two vials of what was later determined to be crack cocaine from the wall that Scott had approached. On the basis of those circumstances, the jury could have reasonably inferred that the defendant had control over the drugs and that a sale had taken place. The jury's verdict with respect to the charge of criminal possession of narcotics with intent to sell is therefore sufficiently supported by the evidence.

B

The second issue is whether, from the facts presented at trial, the jury reasonably could have determined that the defendant had sold a narcotic substance in violation of General Statutes § 21a-278 (b). It is axiomatic that "the offense of the sale of a narcotic substance requires proof of a sale." *State* v. *Smart*, 37 Conn. App. 360, 368, 656 A.2d 677, cert. denied, 233 Conn. 914, 659 A.2d 187 (1995). The defendant claims that the state did not prove the essential element of delivery to establish a sale and

[8] The personal history form filled out as part of the arrest procedure indicated that the defendant was unemployed with no known address.

further that the state did not prove that the unidentifiable item sold was actually cocaine. This claim fails on the basis of our analysis in the preceding section and for the following additional reasons.

Here, Poore and Blanch observed money change hands between the defendant and the driver of the pickup truck. The defendant then signaled to Scott, who went to the stone wall and removed an item from a paper bag, which was later determined to contain a number of vials of cocaine. Scott then gave the item to the driver of the pickup truck. The defendant was later found to have $460 on his person, despite being unemployed. We have, furthermore, previously established that the defendant constructively possessed the paper bag containing thirty-two vials of cocaine. During trial, Hotsky testified as an expert witness for the prosecution that the quantity of narcotics possessed by the defendant and Scott was consistent with sale as opposed to personal use.[9]

In this case, the unidentified item sold to the man in the pickup truck was never recovered, so there was no direct evidence that it was, in fact, cocaine. The state, therefore, had to rely on circumstantial evidence to prove that the defendant sold cocaine. This court has previously stated that "[s]o far as probative force is concerned, there is no distinction between direct and circumstantial evidence . . . and all the evidence must be given a construction most favorable to sustaining the jury's verdict." (Citation omitted.) *State* v. *Baskins*, 12 Conn. App. 313, 316, 530 A.2d 663, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987).

---

[9] The following colloquy ensued between the state and Hotsky:

"[Assistant State's Attorney]: And when you would see the crack cocaine in an amount that would contain thirty-two separate vials of crack cocaine, if that was kept together, would you have an opinion as to whether that possession would be consistent with personal use or consistent with sale?

"[Hotsky]: Based on my training and experience, that would be consistent with the sale of that drug."

On the basis of the verdict in the present case, it is clear that the jury inferred that the item handed by Scott to the unidentified driver of the pickup truck in exchange for money, the transfer of which was orchestrated by the defendant, was a narcotic substance. We must, therefore, consider whether the jury's inference was so unreasonable that the verdict cannot be supported. That inference was supported by the facts that the item appeared to have come from the same paper bag that had Scott's fingerprint on it and was found to contain a number of vials that were later proven to contain cocaine. "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence . . . ." (Internal quotation marks omitted.) Id., 317. We conclude that the jury's inference in this case was not unreasonable and that the evidence was sufficient to support the jury's verdict on the charge of sale of a narcotic substance.

## C

We next must determine whether there was sufficient evidence to support the defendant's conviction of conspiracy to sell a narcotic substance. The defendant argues that there was insufficient evidence to establish an agreement between the defendant and Scott to sell the cocaine. He further claims that there was insufficient evidence to prove that any of the three overt acts alleged by the state in the third count of the substitute information were committed by the defendant and Scott in furtherance of the conspiracy. We disagree.

### 1

"To prove the crime of conspiracy, in violation of § 53a-48, the state must establish beyond a reasonable doubt that an agreement existed between two or more persons to engage in conduct constituting a crime and

that subsequent to the agreement one of the conspirators performed an overt act in furtherance of the conspiracy. . . . The state is also obligated to prove that the accused intended that conduct constituting a crime be performed. (Citations omitted.) *State* v. *Jones,* 35 Conn. App. 839, 846–47, 647 A.2d 43 (1994)." (Internal quotation marks omitted.) *State* v. *Elijah,* 42 Conn. App. 687, 695, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996).

"[I]t is not necessary to establish that the defendant and his coconspirators signed papers, shook hands, or uttered the words we have an agreement. *State* v. *Stellato,* [10 Conn. App. 447, 453, 523 A.2d 1345 (1987)]." (Internal quotation marks omitted.) *State* v. *Elijah,* supra, 42 Conn. App. 696. Indeed, "[b]ecause of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. *State* v. *Vessichio,* [197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986)]." (Internal quotation marks omitted.) *State* v. *Elijah,* supra, 696. " '[A] conspiracy can be inferred from the conduct of the accused. *State* v. *Lynch,* [21 Conn. App. 386, 400, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990)].' *State* v. *Boykin,* [27 Conn. App. 558, 565, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992)]." *State* v. *Elijah,* supra, 696.

Furthermore, "[t]he size of a defendant's role does not determine whether that person may be convicted of conspiracy charges. Rather, what is important is whether the defendant willfully participated in the activities of the conspiracy with knowledge of its illegal ends. . . . Participation in a single act in furtherance of the conspiracy is enough to sustain a finding of knowing participation." (Citations omitted; internal quotation marks omitted.) *State* v. *Boykin,* supra, 27 Conn. App. 565.

The jury reasonably and logically could have inferred that the defendant and Scott had agreed to work in concert to commit the crime of selling cocaine. The defendant spoke with the driver of the pickup truck and took money from him. The defendant then signaled Scott and Scott walked to and from the stone wall where the bag with thirty-two vials of cocaine was hidden and handed an item to the person in the pickup truck. Those facts support the inference that the defendant and Scott had agreed to participate in the venture. We, therefore, conclude that there was sufficient evidence to support the jury's determination that the defendant and Scott had entered into an agreement to sell cocaine.

2

The defendant further claims that there was insufficient evidence to prove that any of the three overt acts alleged by the state in the third count of the substitute information were committed by the defendant and Scott in furtherance of the conspiracy. Those allegations are "(1) [t]hat prior to 4:30 p.m., Antonio Ricardo Forde and Wayne A. Scott met in the area of the intersection of Lake Street and Pond Street for the purpose of selling cocaine; (2) [t]hat prior to 4:30 p.m., either Antonio Ricardo Forde or Wayne A. Scott or both hid a number of vials of cocaine in a stone wall in the area of the intersection of Lake Street and Pond Street; (3) [t]hat at approximately 4:30 p.m., Antonio Ricardo Forde and Wayne A. Scott sold cocaine to another person in the area of the intersection of Lake Street and Pond Street; in violation of Sections 53a-48 (a) and 21a-278(b) of said Statutes."

"The law on overt act charges was set forth in *United States* v. *Sellers*, 603 F.2d 53, 56 (8th Cir. 1979), vacated in part on other grounds, 447 U.S. 932, 100 S. Ct. 3033, 65 L. Ed. 2d 1127 (1980), modified, 628 F.2d 1085 (8th Cir. 1980). 'In a conspiracy prosecution, the government

is not limited to proof of only those overt acts charged in the indictment and in fact need not prove every overt act alleged.' *United States* v. *Harris*, 542 F.2d 1283, 1300 (7th Cir. 1976), cert. denied [sub nom. *Clay* v. *United States*], 430 U.S. 934, 97 S. Ct. 1558, 51 L. Ed. 2d 779 (1977); *United States* v. *Adamo*, 534 F.2d 31, 38 (3d Cir.), cert. denied [sub nom. *Kearney* v. *United States*], 429 U.S. 841, 97 S. Ct. 116, 50 L. Ed. 2d 110 (1976)." *State* v. *Boykin*, supra, 27 Conn. App. 571–72.

"An overt act is an essential ingredient of the crime of conspiracy; it may be committed by either coconspirator. *State* v. *Walton*, 227 Conn. 32, 48, 630 A.2d 990 (1993)." *State* v. *Elijah*, supra, 42 Conn. App. 697. Here, possession of narcotics with intent to sell was the principal overt act of the conspiracy. See id. This court has previously recognized that " '[p]ossession of the drugs is sufficient for proof of the overt act in a conspiracy. [*State* v. *Walton*, supra, 48.]' *State* v. *Goodrum*, 39 Conn. App. 526, 540, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995)." *State* v. *Elijah*, supra, 697. Furthermore, "[p]articipation in a single act in furtherance of the conspiracy is enough to sustain a finding of knowing participation. . . ." (Citations omitted.) *State* v. *Goodrum*, supra, 538.[10] Because we have already determined that there was sufficient evidence for the jury reasonably to find that the defendant had constructive possession of the cocaine, we conclude that there was sufficient evidence for the jury reasonably to find the necessary overt act in furtherance of the conspiracy.

## II

The defendant next claims that the prosecutor's closing argument denied the defendant his right to a fair

---

[10] Because participation in a single act is satisfactory, we do not need to address whether there was sufficient evidence to prove that (1) the defendant and Scott met at the intersection prior to 4:30 for the purpose of selling cocaine and (2) the defendant and Scott hid a number of vials of cocaine in the stone wall.

trial. Specifically, the defendant claims that the prosecutor improperly (1) commented on the defendant's failure to testify, (2) commented on facts not in evidence and (3) gave his personal opinion as to the guilt of the defendant. Although the defendant concedes that he failed to preserve this claim during trial, he argues that his claim is reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[11] and *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973). We will review this claim because the record is adequate for review and the defendant alleges a claim of constitutional magnitude in asserting that he was denied his due process right to a fair trial. See *State* v. *Otero*, 49 Conn. App. 459, 463, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998); see also *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). The defendant's claim fails, however, because the alleged constitutional violation did not clearly exist and did not clearly deprive him of a fair trial. We will address each of these issues in turn.

Our Supreme Court has "previously acknowledged that prosecutorial misconduct can occur in the course

[11] "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. [*State* v. *Golding*, supra, 213 Conn. 239–40.] *State* v. *Graham*, 33 Conn. App. 432, 441–42, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986); see also *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). . . . *State* v. *Harris*, 46 Conn. App. 216, 242–43, 700 A.2d 1161, cert. denied, 243 Conn. 930, 701 A.2d 662 (1997). *State* v. *Billie*, [47 Conn. App. 678, 687 n.7, 707 A.2d 324, cert. granted on other grounds, 244 Conn. 933, 717 A.2d 231 (1998)]." (Internal quotation marks omitted.) *State* v. *Otero*, 49 Conn. App. 459, 463 n.6, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998).

of closing argument. *State* v. *Williams;* 204 Conn. 523, 539, 529 A.2d 653 (1987). In order to deprive a defendant of his constitutional right to a fair trial, however, the prosecutor's conduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct.' . . . Id., 539–40." *State* v. *Atkinson,* 235 Conn. 748, 768–69, 670 A.2d 276 (1996).

"[T]o determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. *State* v. *Oehman,* 212 Conn. 325, 336, 562 A.2d 493 (1989)." *State* v. *Garrett,* 42 Conn. App. 507, 515–16, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 398 (1996). To make this determination, we must focus on several factors: " '(1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case.' *State* v. *Williams,* 41 Conn. App. 180, 190, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996)." *State* v. *Garrett,* supra, 516.

## A

We must first examine the prosecutor's challenged comments. The defendant specifically points to the prosecutor's reference to the defendant's failure to give his address and employment status on the personal history form taken by Blanch when the defendant was processed at the police station.

"It is well settled that comment by the prosecuting attorney . . . on the defendant's failure to testify is prohibited by the fifth amendment to the United States constitution. *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965). . . . Our legislature has given statutory recognition to this right by virtue of its enactment of General Statutes § 54-84. In determining whether a prosecutor's comments have encroached upon a defendant's right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify? . . . Further, in applying this test, we must look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury. . . . Finally, [w]e also recognize that the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . *State* v. *Haase*, 243 Conn. 324, 332–33, 702 A.2d 1187 (1997)." (Internal quotation marks omitted.) *State* v. *Satchwell*, 244 Conn. 547, 570–71, 710 A.2d 1348 (1998).

During closing argument, the prosecutor stated, "There is no evidence that Mr. Forde was employed. We are not even sure where he lived." These comments were based on uncontradicted testimony given by Blanch on both direct and cross-examination that the defendant provided neither his address nor place of employment on the personal history taken by the police as a part of their processing procedure. Indeed "[t]he fifth amendment to the United States constitution, applicable to the states through the fourteenth amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that

such silence is evidence of guilt. . . . This does not mean that the state is prohibited from calling to the jury's attention any portion of the evidence that stands uncontradicted . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, 48 Conn. App. 717, 720, 711 A.2d 769, cert. denied, 245 Conn. 922, 717 A.2d 238 (1998). Here, the prosecutor's comments highlighted uncontroverted testimony offered, and not objected to, during trial. We agree with the state that the prosecutor's comments were reasonable inferences based on uncontroverted evidence and, therefore, conclude that the jury would not reasonably have taken them to be comments on the defendant's failure to testify. As a result, we conclude that the defendant's claim fails to satisfy the third prong of *Golding*.

### B

We next consider whether the prosecutor improperly suggested an inference from facts not in evidence. The defendant specifically claims that there was no evidence offered to prove that he was unemployed, but the prosecutor improperly stated during closing argument that that was a fact. We disagree with the defendant's contention. While we recognize that counsel may not comment or suggest an inference from facts not in evidence; *State* v. *Prioleau*, 235 Conn. 274, 320, 664 A.2d 743 (1995); here, evidence was offered during Blanch's direct and cross-examination that the defendant was unemployed because the personal history form listed no employment. Because that fact was properly in evidence, the prosecutor's comment on it during closing argument was not improper. The defendant's claim therefore fails to satisfy the third prong of *Golding*.

### C

We last address whether the prosecutor improperly gave his personal opinion as to the guilt of the defendant. As a preliminary matter, we note that a prosecutor

may not express his opinion, directly or indirectly, as to the guilt of the defendant. *State* v. *Williams*, supra, 204 Conn. 541. "Such expressions of personal opinion are a form of unsworn and unchecked testimony." Id. We agree with the defendant that the prosecutor improperly stated his opinion on an ultimate issue of fact when he stated: "I think that they were there to sell crack cocaine." While we agree with this assertion, "[w]e do not scrutinize each individual comment in a vacuum, but rather 'we must review the comments complained of in the context of the entire trial.' *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993). It is in that context that 'the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted.' Id." *State* v. *Chasse*, 51 Conn. App. 345, 356, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). The defendant has failed to meet his burden. That statement was a singular instance of a clearly improper remark, but it was isolated and was not part of an egregious pattern of misconduct that would "[deprive] the defendant of a fair trial . . . or otherwise [implicate] the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *Garrett*, supra, 42 Conn. App. 517. We conclude, therefore, that the prosecutor's remarks did not cause substantial prejudice to the defendant and, consequently, that further review of the defendant's prosecutorial misconduct claim pursuant to *Golding* is unwarranted. Id., 517–18.

The judgment is affirmed.

In this opinion the other judges concurred.